**IDT CORPORATION, Appellant,**

v.

**CLARITI CARRIER SERVICES, LTD. & Clariti Telecommunications International, Ltd., Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2001.

Filed April 19, 2001.

Brett L. Messinger, Malvern, for appellant.

Joseph M. Armstrong, Philadelphia, for appellees.

Before DEL SOLE, President Judge, EAKIN and LALLY–GREEN, JJ.

DEL SOLE, President Judge:

¶ 1 This appeal follows the trial court's grant of preliminary objections and its dismissal of Appellant's action based on the terms of a forum selection clause. We affirm.

¶ 2 Appellant, a Delaware corporation with its principal place of business in New Jersey filed a complaint against Appellees, Clariti Telecommunications International, Ltd. (Clariti Telecom), a Delaware corporation with a principal place of business in Pennsylvania, and Clariti Carrier Service, Ltd. (Clariti CS), a United Kingdom corporation with a principal place of business in England. The complaint alleges that Appellant entered into a "Carrier Service Agreement" (the Agreement) with an entity known as Global First Communications, Ltd. (Global) to provide long distance telephone communications. It further alleges that Global was a wholly owned subsidiary of Clariti Telecom and that it assigned its interests and obligations under the contract to Clariti Telecom. Clariti Telecom, in turn, is alleged to have subsequently assigned the Agreement to its wholly owned subsidiary, Clariti CS. Appellant sought payment from Appellees for unpaid charges.

¶ 3 The Agreement includes language regarding a choice of forum. It provides

the Agreement "and the relationship between the Parties hereto will be governed by the laws of England." Carrier Service Agreement at ¶ 7.7. It further provides that the "parties will notify each other in writing of any dispute or claim arising out of or in connection with this Agreement" and will attempt to resolve any dispute with discussions. *Id.* at ¶ 7.8 If the parties are unable to resolve their dispute, the Agreement states "either Party may by written notice to the other request that the Parties try to resolve the dispute or claim through mediation." *Id.* at ¶ 7.8.1. If they are unable to resolve matters within 60 days, the Agreement provides that those claims exceeding twenty thousand pounds "shall be referred to and finally resolved by arbitration under the LCIA (London Court of International Arbitration)" and "the seat of the arbitration shall be London, England." *Id.* The agreement also provides that "where any dispute or claim is not referred to arbitration in accordance with this Article 7.8, the Parties hereby submit to the exclusive jurisdiction of the English courts." *Id.* at ¶ 7.8.3.

¶ 4 In interpreting the Agreement the trial court found that the terms clearly require Appellant to pursue mediation and then, if mediation proves unsuccessful, to avail itself of arbitration in London under the LCIA. The court also ruled that, in any respect, the parties' choice of forum should be enforced. On appeal from this ruling Appellant raises four issues:

1) Whether the trial court erred in finding that the dispute resolution provision was applicable when no party made a demand for mediation or arbitration?

2) Whether the trial court erred in finding that jurisdiction lies in England?

3) Whether defendants/Appellees were estopped from raising the dispute resolution provision of the carrier service agreement after defendants/Appellees denied that they were assigned the carrier service agreement, and took the position that they were not bound by the carrier service agreement.

4) Whether the trial court erred in holding that Counts II, IV and V of the Complaint are subject to the exclusive jurisdiction of the English courts.

Appellant's Brief at 4.

■ ¶ 5 Appellant first contends that, because the mediation provision of the Agreement was not mandatory and that since neither party requested the matter to proceed to mediation or arbitration, it was free to pursue its remedies in the Court of Common Pleas of Philadelphia County. This argument has no merit. As the trial court recognized, the Agreement directs an aggrieved party who wishes to pursue its claim, to do so by mediation and if that fails to proceed in London under the LCIA Rules. The Agreement cannot be interpreted as Appellant suggests to make it optional for it to pursue remedies within this Commonwealth. In fact the Agreement specifically states that, even when a claim is not referred to arbitration in accordance with its terms, the parties "submit to the exclusive jurisdiction of the English courts." As we stated in *Shapiro v. Keystone,* 400 Pa.Super. 287, 583 A.2d 498, 500 (1990), when considering whether to grant a petition to compel arbitration in the courts of this Commonwealth: "the grant of appellant's petition would lead to an untoward result where the Pennsylvania courts were intruding in what, from a reading of the policy provision, appears to be a matter which the parties intended for the courts of [another] domicile." The parties to the instant agreement agreed to resolve matters in the courts of England

according to English law. The trial court correctly ruled that jurisdiction of the matter lies in England.[1]

■ ¶ 6 Appellant next maintains that Clariti Telecom is estopped from claiming the applicability of the dispute resolution provision because it denies that it was an assignee to the agreement. Appellant fails to recognize, however, that it has chosen to proceed against Clariti Telecom under the terms of the Agreement, which contains the forum selection clause. Whether Clariti Telecom is ultimately responsible under the Agreement as an assignee is a matter to be resolved in the English courts.

■ ¶ 7 Appellant also claims that not all the counts of its complaint are subject to the mediation and/or arbitration provisions. It claims that Counts III, IV and V are not based on the contract but are based on theories of alter ego and unjust enrichment. Our reading of these counts causes us to conclude that, because they arise from the alleged contractual relationship and implicate the contract terms, they too are subject to the forum selection clause.

¶ 8 Counts II and IV specifically allege that Global was a wholly owned subsidiary of Clariti Telecom and that, under the terms of the Agreement, Global became indebted to Appellant in a principal amount equivalent to $690,163.07. It is claimed that Clariti Telecom, as the alter ego of Global, "is liable to [Appellant] for the debt incurred under the [Agreement]." Appellant's Complaint at ¶ 48 and 56. Similarly, with respect to Count V, based on unjust enrichment, Appellant alleges

"[f]ollowing the assignment of [the Agreement] to Clariti Telecom and/or Clariti CS, Clariti Telecom and/or Clariti CS continued to use [Appellant's] telecommunication service." Appellant's Complaint at ¶ 58.

¶ 9 The claims in this case differ from those found in *Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926 (Pa.Super.2000), wherein this Court was examining the applicability of a forum selection clause in the plaintiff's complaint. We found that, even if the clause applied to contract claims, it would not apply to the remaining noncontract claims. We ruled that the plaintiff's claims for tortious interference with employment relationship, misappropriation of trade secrets, tortious interference with customers, unfair competition, conspiracy and punitive damages were all separate from a contract which involved the sale of products. This Court examined the language of the parties' agreement which stated: "This Agreement and each contract made between the parties hereunder for the sale of products will in all respects be interpreted in accordance with the laws of England." *Id.* at 929. It was held that these claims were not connected to the contract for the sale of products, rather they concerned future matters, and therefore the contract's forum selection clause did not apply to these claims.

¶ 10 This Court in *Morgan Trailer* distinguished its facts from those in other cases involving contracts which contained broad language or involved claims related to, or arising out of, the contractual relationship between the parties. *See Cres-*

---

1. It has been held that the courts of this Commonwealth should decline to proceed with a claim where the parties have freely agreed that litigation is to be conducted in another forum, where such agreement is not unreasonable at the time of the time of litigation. *Churchill Corp. v. Third Century, Inc.,* 396 Pa.Super. 314, 578 A.2d 532 (1990) (quoting *Central Contracting Co. v. C.E. Youngdahl & Co.,* 418 Pa. 122, 209 A.2d 810, 816 (1965)). Appellant has not challenged the "reasonableness" of the forum selection clause in the Agreement.

cent *Int'l, Inc. v. Avatar Communities, Inc.,* 857 F.2d 943 (3d Cir.1988); *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.,* 119 F.3d 1070 (3d Cir.1997); and *Hensel v. Terra Nova Ins. Co.,* 1997 WL 602747 (E.D.Pa.1997). The court in *Crescent Int'l, Inc.* ruled that pleading alternate non-contractual theories was not alone enough to avoid a forum selection clause if the claims made arose out of the contractual relation and implicated the contract's terms. *Crescent Int'l, Inc.,* 857 F.2d at 944.

¶ 11 In this case the forum selection clause is written in broad terms. It states that both "this Agreement and the relationship between the Parties hereto will be governed by the laws of England." Carrier Service Agreement at ¶ 7.7. Counts II, IV and V each make reference to the Agreement and seek recovery either under the terms of the agreement or for services rendered as a result of the agreement. Thus, we conclude that these counts relate to the alleged contractual relationship between the parties. As such we conclude that they are subject to the terms of the forum selection clause included in the Agreement. The trial court did not err in ruling that it was without jurisdiction over this dispute, which should be resolved in England.

¶ 12 Order affirmed.