PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

PEE DEE HEALTH CARE, P.A.,
            *Plaintiff-Appellant,*

v.

MARK SANFORD, in his official
capacity as the Governor of South
Carolina; ROBERT F. KERR, in his
official capacity as Director of the
South Carolina Department of
Health and Human Services; SOUTH
CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
            *Defendants-Appellees.*

No. 06-2108

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(3:05-cv-02917-MJP)

Argued: September 26, 2007

Decided: December 5, 2007

Before MICHAEL, GREGORY, and DUNCAN, Circuit Judges.

---

Affirmed by published opinion. Judge Duncan wrote the opinion, in
which Judge Michael and Judge Gregory joined.

---

## COUNSEL

**ARGUED:** Tony Ray Megna, Blythewood, South Carolina, for
Appellant. Kenneth Paul Woodington, DAVIDSON, MORRISON &

LINDEMANN, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Charles E. Carpenter, Jr., RICHARDSON, PLOWDEN, CARPENTER & ROBINSON, P.A., Columbia, South Carolina, for Appellant. William H. Davidson, II, DAVIDSON, MORRISON & LINDEMANN, P.A., Columbia, South Carolina, for Appellees.

---

**OPINION**

DUNCAN, Circuit Judge:

This case raises two issues of importance to healthcare providers who receive reimbursement from Medicaid. The first is whether healthcare providers serving Medicaid recipients have a right to sue state officials, under 42 U.S.C. § 1983, to enforce rights created under the Medicaid reimbursement program at 42 U.S.C. § 1396a(bb). The second is whether the appropriate venue for such an action can be limited by contract.

Pee Dee Health Care, P.A. ("Pee Dee") is a healthcare provider qualified under the Medicaid program to serve low-income individuals in rural areas of South Carolina. As a Medicaid service provider, Pee Dee is entitled to reimbursement payments from the state. The Benefits Improvement and Protection Act of 2000 ("BIPA") provides the methodology for computing those payments. To receive reimbursement payments, however, healthcare providers must first enter into a contract with the South Carolina Department of Health and Human Services ("SCDHHS"), the state agency responsible for the administration of the Medicaid program in South Carolina. Each contract contains a forum-selection clause which dictates that all reimbursement claims must be pursued through state administrative and judicial avenues.

Pee Dee claims that the SCDHHS payment methodologies do not comply with various provisions of BIPA. Pee Dee brought this action, pursuant to 42 U.S.C. § 1983, in the United States District Court for the District of South Carolina against the Governor of South Carolina, the Director of SCDHHS and SCDHHS itself, to enforce the reimbursement provisions of BIPA. The district court dismissed the BIPA

claim, finding venue inappropriate based on the forum-selection clause in the provider contract between Pee Dee and SCDHHS. We affirm, holding that even though a healthcare provider has a private right of action under § 1983 to enforce 42 U.S.C. § 1396a(bb), Pee Dee agreed, in the forum-selection clause, to bring such an action in a state tribunal and is bound by that agreement.

I.

A.   The Medicaid Scheme

Medicaid is a cooperative federal-state program designed to partially compensate states for the costs of providing healthcare to needy individuals. 42 U.S.C. § 1396. States are not required to participate in the program, but if they choose to do so, "they must implement and operate Medicaid programs that comply with detailed federally mandated standards." *Antrican v. Odom*, 290 F.3d 178, 183 n.2 (4th Cir. 2002). To qualify for federal assistance, a state must submit a comprehensive plan to the federal Secretary of Health and Human Services describing the nature and scope of the state's Medicaid program. 42 C.F.R. § 430.10. Each state plan must include, among its details, a scheme for reimbursing rural health clinics ("RHCs") for services provided to Medicaid patients.[1] 42 U.S.C. § 1396a(bb).

The Medicaid Act, as amended by BIPA, Pub. L. No. 106-554, § 1(a)(6), 114 Stat. 2763, (codified as amended in scattered sections of 42 U.S.C.), regulates the way in which RHCs receive reimbursement payments for the services they provide to Medicaid patients. In general, BIPA allows for two methods of reimbursement. The first method is a "prospective payment system" based on historical-average costs plus a cost-of-living factor.[2] 42 U.S.C. § 1396a(bb)(2).

[1]BIPA imposes identical requirements regarding the reimbursement of federally qualified health centers ("FQHCs"). Because Pee Dee only claims to be an RHC, we focus solely on the RHC requirement.

[2]Under this method, state Medicaid plans "provide for payment for such services in an amount (calculated on a per visit basis) that is equal to 100 percent of the average of the costs of the center or clinic of furnishing such services . . . which are reasonable . . . ." 42 U.S.C. § 1396a(bb)(2).

The second method, set forth in § 1396a(bb)(6), authorizes an "alternative payment methodology" that can take a number of forms, provided that the state and the clinic agree upon the system and it results in payment of an amount which is at least equal to the amount authorized under the prospective payment system.

SCDHHS is the state agency in South Carolina responsible for administration of the Medicaid program. Healthcare providers in South Carolina are not required to accept Medicaid patients. However, if a healthcare provider elects to treat Medicaid patients and to seek reimbursement from SCDHHS for its services, it does so by entering into a contract ("provider contract" or "contract") with SCDHHS.

The contract provides for the method and amounts of payment, as well as for certain remedies if a healthcare provider believes it has not been reimbursed as required by law.[3] For example, the contract provides:

> A.  *Reimbursement*
>     The Rural Health Clinic (RHC) Medicaid rate for services rendered under this contract shall be determined based upon applicable Medicare/Medicaid laws, rules or regulations and SCDHHS policies and procedures in accordance with Attachment 4.19-B of the State Plan for Medical Assistance.

J.A. 117.[4]

---

[3]For the purposes of this discussion, we refer to the provider contract between Pee Dee and SCDHHS, dated as of July 1, 2004, found in the joint appendix. J.A. 111-30. However, we note that this contract contains the same language as the July 2001 contract.

[4]South Carolina has elected to use an "alternative payment methodology" under 42 U.S.C. § 1396a(bb)(6). Attachment 4.19-B of South Carolina's Medicaid plan explains this alternative scheme. Pee Dee's underlying challenge to the SCDHHS payment methodology focuses on the language of Attachment 4.19-B.

Should any dispute arise under the terms of the contract, a health-care provider agrees, as part of its decision to accept Medicaid reimbursement payments, that its "sole and exclusive remedy" regarding such disputes would be to first file a Notice of Appeal of SCDHHS's action to the SCDHHS Appeals Division. J.A. 124. Upon exhaustion of all administrative remedies, judicial review of final agency decisions is available in the state court system. S.C. Code Ann. § 1-23-380. Such appeals are governed by Article VIII of the contract, which provides:

> If any dispute shall arise under the terms of this contract, the *sole and exclusive remedy* shall be the filing of a Notice of Appeal within thirty (30) days of the receipt of written notice of SCDHHS's action or decision which forms the basis of the appeal. Administrative appeals shall be in accordance with SCDHHS's regulations R. 126-150 *et seq.* . . . Judicial Review of any final SCDHHS administrative decision shall be in accordance with § 1-23-380, Code of Laws of South Carolina (1976), as amended.

J.A. 124[5] (emphasis added).

Such subsequent judicial review must proceed in the venue and location identified in Sections (R) and (S) of Article IX of the contract.[6]

---

[5]Regulation 126-150(B) provides that the tribunal to hear such appeals would be the state administrative hearing system. An appeal under this section is

> [t]he formal process of review and adjudication of Agency determinations, which shall be afforded to any person possessing a right to appeal pursuant to statutory, regulatory, and/or contractual law; provided, that to the extent that an appellant's appellate rights are in any way limited by contract with the Agency or assigned to the Agency, said contractual provision shall control.

S.C. Code Ann. Regs. 126-150(B). Section 1-23-380 provides for judicial review only in state courts—either the South Carolina Court of Appeals or the Administrative Law Court. S.C. Code Ann. § 1-23-380.

[6]Following oral argument, Pee Dee filed a "Motion to Supplement Brief of Appellant" in which it attempted to argue that Section (R) of the

R.   *Venue of Actions.*
Any and all suits or actions for the enforcement of the obligations of this contract and for any and every breach thereof, or for the review of a SCDHHS final agency decision with respect to this contract or audit disallowances, and any judicial review sought thereon and brought pursuant to the S.C. Code Ann. § 1-23-380 (1976, as amended) shall be instituted and maintained in any court of competent jurisdiction in the County of Richland, State of South Carolina.

S.   *Place of Suit*
Any action at law, suit in equity, or judicial proceeding for the enforcement of this contract or any provision thereof shall be instituted only in the courts of the State of South Carolina.

J.A. 128.

Pee Dee, through three Medicaid-certified RHCs, provides health-care services to low-income individuals in rural areas of South Carolina. Its services are subject to reimbursement from Medicaid funds. Pee Dee has entered into two consecutive three-year contracts with SCDHHS since the enactment of BIPA. Each contract contains a forum-selection clause—Sections (R) and (S)—requiring that any claims that arise under the terms of the contract be pursued first through an administrative appeals process and then in state court.[7]

---

contract allows for judicial review of final agency decision "*in any court* [—federal or state—] of competent jurisdiction in the County of Richland, State of South Carolina" (emphasis added). The Columbia Division for the United States District Court for the District of South Carolina is located in Richland County. Therefore, Pee Dee asserted that the district court was a proper venue for this case. Because Pee Dee raised this issue for the first time following oral argument on appeal, we deny the motion. *See Wheatley v. Wicomico County*, 390 F.3d 328, 335 (4th Cir. 2004). We also note that Sections (R) and (S) reflect an agreement to pursue administrative appeals in a state tribunal.

[7]Even though Pee Dee's claim is couched as seeking to remedy a failure to receive a statutorily conferred benefit rather than seeking the enforcement of a contract, Pee Dee does not dispute that its claim arises under the terms of the contract.

## B.

Pee Dee originally filed this action in South Carolina state court against South Carolina Governor Mark H. Sanford, Director of SCDHHS Robert Kerr, and SCDHHS itself (collectively "Appellees").[8] Appellees answered and removed this case to federal district court. Pee Dee filed an amended complaint asserting a federal cause of action against Appellees under 42 U.S.C. § 1983, seeking to enforce the reimbursement provisions of BIPA, 42 U.S.C. § 1396a(bb). Specifically, the new claim alleges that the reimbursement formula used by SCDHHS violates Pee Dee's statutorily conferred right to proper reimbursement as provided under § 1396a(bb).[9] Pee Dee claims that if SCDHHS had computed payments in accordance with federal requirements, Pee Dee would have been compensated at higher rates than those at which it was actually paid beginning in January 2001.[10]

Appellees moved to dismiss Pee Dee's new claim under BIPA alleging that Pee Dee agreed, as part of its contract for Medicaid reimbursement, to pursue all claims arising under the contract through state administrative and judicial avenues. Thus, Appellees asserted that the voluntary forum-selection clause rendered venue in federal district court improper.

Following arguments on the motion to dismiss, the district court dismissed the reimbursement claim based on the forum-selection clause. Pee Dee now appeals the dismissal of that claim arguing the

---

[8]Pee Dee originally claimed that certain proposed changes to the South Carolina State Medicaid Plan needed to be promulgated in the State Register and submitted for approval by the General Assembly.

[9]Pee Dee raised this argument with SCDHHS approximately four years prior to initiating this suit, but never appealed the rejection of those claims. *See* J.A. 108. Pee Dee has continued to accept payments that were based on the methodology it now challenges.

[10]While this appeal does not involve the merits of Pee Dee's reimbursement claims, we note that SCDHHS maintains that the "alternative payment methodology" under which Pee Dee has been reimbursed since January 1, 2001 and about which Pee Dee now complains, results in a "higher per-visit reimbursement" than the "prospective payment" method. J.A. 144.

district court erred in holding that: (1) the exclusive remedy available to Pee Dee is provided in the provider contract between Pee Dee and SCDHHS, and (2) the claim against Appellees can only be brought in a state tribunal due to the forum-selection clause.

We review de novo the district court's dismissal based on a forum-selection clause. *Sucampo Pharm., Inc. v. Astellas Pharma*, 471 F.3d 544, 550 (4th Cir. 2006) ("[A] motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue."). In doing so, we first address the issue of whether healthcare providers have a private right of action under § 1983 to enforce § 1396a(bb).

## II.

Section 1983 imposes liability on anyone who, acting under color of state law, deprives a person of any "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A plaintiff alleging a violation of a federal statute may sue under § 1983 unless "the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983," or "Congress has foreclosed such enforcement of the statute in the enactment itself[.]" *Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423 (1987).

A statute creates an enforceable right if: (1) Congress intended that the provision in question benefit the plaintiff; (2) the right ostensibly protected by the statute "is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) the statute unambiguously imposes a binding obligation on the states. *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997) (internal quotations omitted). In analyzing these requirements, a court must be careful to ensure that the statute at issue contains "rights-creating language" and that the language is phrased in terms of the persons benefitted, not in terms of a general "policy or practice." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284, 287 (2002).[11]

---

[11]*Blessing* stands for the proposition that violations of *rights*, not laws, give rise to § 1983 actions. *Gonzaga*, 536 U.S. at 283. Nevertheless, the

Prior to the enactment of BIPA, this court considered the rights of healthcare providers to enforce reimbursement provisions of the Medicaid Act. *See Va. Hosp. Ass'n v. Baliles*, 868 F.2d 653 (4th Cir. 1989), *aff'd sub nom. Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990). In *Baliles*, this court held that healthcare providers had a right actionable under § 1983 to challenge the method by which a state reimburses them for the cost of treating Medicaid patients.[12] 868 F.2d at 659-60. This court concluded that "the language and legislative history of [the relevant provision] impl[ied] a congressional intent to allow providers a right of action against State failure to comply with federal Medicaid requirements." *Id.* at 658. The Supreme Court, affirming the decision, reasoned that the provision established a system for reimbursement of healthcare providers and was phrased in terms benefitting those providers. *Wilder*, 496 U.S. 498, 510 (1990).

More recently, this court found that another provision of the Medicaid Act, dealing with the Medicaid waiver program created by 42 U.S.C. § 1396n(c), conferred a private right of action enforceable under § 1983. *Doe v. Kidd*, 501 F.3d 348 (4th Cir. Sept. 19, 2007). This court has also allowed a healthcare provider to pursue a § 1983 action to enforce § 1396a(bb)(5) of the Medicaid Act. *Three Lower Counties Cmty. Health Servs. v. Maryland*, 498 F.3d 294 (4th Cir. 2007) (clarifying a state's obligations under § 1396a(bb)(5) when paying FQHCs for services they render to Medicaid patients).[13]

---

*Gonzaga* Court warned lower courts against interpreting *Blessing* "as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect . . . ." *Id.* Therefore, nothing short of an "unambiguously conferred [individual] right" as demonstrated through "rights-creating language" can support a § 1983 action. *Id.* at 283, 290. That is, the language must not focus on the person regulated, as in a provision that proscribes a certain institutional policy or practice. *Id.* at 287-88.

[12]At the time, the reimbursement provisions were part of the Boren Amendment, 42 U.S.C. § 1396a(a)(13)(A) (repealed 1997), which required reimbursement according to rates that were "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

[13]We also note that the Second Circuit has allowed healthcare providers to pursue a § 1983 claim to enforce § 1396a(bb)(2). *Cmty. Health Ctr. v. Wilson-Coker*, 311 F.3d 132 (2d Cir. 2002).

Pee Dee relies heavily on a First Circuit decision in support of its assertion that a right of action exists under § 1983 to enforce § 1396a(bb). *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 74-75 (1st Cir. 2005). The *Rio Grande* court held that "[t]here is an implied action under section 1983 to enforce the special provisions of the Medicaid law dealing with FQHC reimbursement, 42 U.S.C. § 1396a(bb), as these provisions vest the FQHCs with a federal right to proper reimbursement."[14] 397 F.3d at 60. However, as Appellees point out, the focus of the "rights" analysis in *Rio Grande* is on the language found in § 1396a(bb)(5), not on § 1396a(bb) as a whole. Appellees argue that § 1396a(bb)(5), the wraparound provision that was the subject of both *Three Lower Counties* and *Rio Grande*, is the only part of § 1396a(bb) that specifically authorizes payment to a provider, as opposed to describing a general payment methodology. With respect to § 1396a(bb)(1) through (4) and (6), Appellees argue that no rights-creating language is present. Subsection (bb)(5) is the one subsection that is not cited by Pee Dee in support of its claims.

It is an issue of first impression in the federal courts whether § 1396a(bb), read as a whole, contains rights-creating language phrased in terms of the persons benefitted such that it creates a right of action under § 1983. Considering the language of § 1396a(bb) and the case law interpreting Medicaid provisions of similar import in

---

[14]In *Rio Grande*, an FQHC sued the Puerto Rico Secretary of Health under § 1983, alleging that the Secretary failed to make supplemental or wraparound payments to make up the difference between what managed care organizations ("MCOs") paid the FQHC and what the FQHC was entitled to collect under the prospective payment system. 397 F.3d at 60-62. Puerto Rico uses a managed care approach to running their Medicaid system. Under this approach, the Medicaid agency contracts with MCOs to service Medicaid patients. The state pays the MCO a fixed monthly sum per Medicaid patient. The MCO then contracts with an FQHC to actually provide the medical services to the patients. A problem arises when the contract pays the FQHC less than the amount it should receive under the prospective payment system. Section 1396a(bb)(5) addresses this problem by requiring states to pay the FQHC a supplemental, or "wraparound," payment to make up the difference between what the MCO pays the FQHC and what the FQHC is entitled to collect under the prospective payment system. *Id.*; *see* 42 U.S.C. § 1396a(bb)(5).

light of the *Blessing* factors, it is scarcely a stretch to conclude that it does.

Subsection 1396a(bb)(1) states that a "[s]tate plan *shall* provide for payment for services . . . furnished by a Federally-qualified health center and services . . . furnished by a rural health clinic in accordance with the provisions of this subsection." (emphasis added). Subsections (bb)(2)-(bb)(4) repeat the phrase "the state plan *shall* provide for payment for such services." (emphasis added). Subsection (bb)(6)(B), which provides the option for an alternative payment methodology, states that such methodology must "result[ ] in payment to the center or clinic of an amount which is at least equal to the amount otherwise *required* to be paid *to the center or clinic* under this section." (emphasis added).

Applying the *Blessing* test to § 1396a(bb) as a whole, we conclude that § 1396a(bb) gives rise to a right enforceable under § 1983. First, Congress intended the statute to benefit RHCs such as Pee Dee: the "state plan *shall* provide for payment for services . . . *furnished by a rural health clinic*." § 1396a(bb)(1) (emphasis added). Second, the use of "shall provide for payment" is not unduly vague or amorphous such that the judiciary cannot enforce it; the provision is clear that states must reimburse RHCs for services provided to Medicaid patients. Third, the language unambiguously binds the states as indicated by the repeated use of "shall".

We further find, as required by *Gonzaga,* that § 1396a(bb) contains rights-creating language because it specifically designates the beneficiaries—the RHCs—and it mandates action on the part of the states. Moreover, § 1396a(bb) has an individual focus rather than an aggregate focus on institutional policy or practice. Indeed, this statutory focus stands in stark contrast to the "policy or practice" language present in the provision interpreted in *Gonzaga*.[15] 536 U.S. at 287-88.

---

[15]The statute at issue in *Gonzaga* provided that "[n]o funds shall be made available under any applicable program to any education agency or institution which has a *policy or practice* of permitting the release of education records. . . ." 536 U.S. at 279 (emphasis added). The Court found that such language was not rights-creating; the focus of the provision was too far removed from the interests of the students allegedly benefitted by it and therefore did not "confer the sort of 'individual entitlement' that is enforceable under § 1983." *Id.* at 287, (citing *Blessing*, 520 U.S. at 343).

Thus, we conclude that § 1396a(bb) creates an enforceable right under § 1983.

III.

Notwithstanding our finding that a right of action exists under § 1983 to enforce § 1396a(bb), there is nothing in federal law prohibiting a healthcare provider from waiving the right to pursue such a § 1983 claim in a federal forum. On the contrary, procedural rights under § 1983, like other federal constitutional and statutory rights, are subject to voluntary waiver. *Town of Newton v. Rumery*, 480 U.S. 386, 398 (1987).

In *Town of Newton*, the Supreme Court upheld a contract clause that completely eliminated the plaintiff's right to sue under § 1983. *See id.* at 390; *see also Lake James Cmty. Volunteer Fire Dept., Inc. v. Burke County, N.C.*, 149 F.3d 277 (4th Cir. 1998) (upholding a similar contractual waiver).[16] The town of Newton dropped criminal charges against the federal plaintiff in exchange for the plaintiff's waiver of his right to file a civil rights action, including an action under § 1983. The Court enforced the agreement because the plaintiff voluntarily entered into it. The Court noted that the controlling principle for determining whether a waiver clause is unenforceable is "if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Town of Newton*, 480 U.S. at 392. However, where a party "voluntarily waive[s] his right to sue under § 1983, the public interest opposing involuntary waiver of constitutional rights is no reason to hold [an] agreement invalid." *Id.* at 394.

This court has applied a voluntariness standard to determine the enforceability of agreements in which a party releases possible § 1983 claims. *See, e.g.*, *Bushnell v. Rossetti*, 750 F.2d 298, 301-02 (4th Cir. 1984) (allowing the release of a right to bring a § 1983 action if the

---

[16]In *Lake James* this court held that a volunteer fire department's agreement not to sue the county for approving the transfer of certain fire protection areas to other fire departments was enforceable despite the waiver of a constitutional right to petition the government. 149 F.3d at 280.

decision to release was "voluntary, deliberate, and informed") (internal quotations omitted); *cf. United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005) (a criminal defendant may voluntarily waive constitutional procedural rights as well as statutory procedural rights through a plea agreement). Where a party knowingly and willingly enters into an agreement that waives a constitutional right, the agreement is enforceable so long as it does not undermine the public's interest in protecting the right.[17] *See Lake James*, 149 F.3d at 278. The *Lake James* court held this to be the case where the contract itself provided the basis for the right and the waiver was narrowly tailored. *See id.* at 281.

Healthcare providers in South Carolina are not required to accept Medicaid patients. Therefore, any decision on the part of a healthcare provider such as Pee Dee to enter into a contract for Medicaid reimbursement is voluntary. Moreover, Pee Dee has entered into a series of contracts with SCDHHS, renewing its commitment to the terms therein. Because Pee Dee voluntarily waived its right to bring an action alleging improper reimbursement in federal court, the public interest opposing involuntary waiver of constitutional rights is no reason to hold this agreement invalid. *See Town of Newton*, 480 U.S. at 394.

Furthermore, the contract between Pee Dee and SCDHHS does not completely deprive Pee Dee of a remedy, as was the case in *Town of Newton* and *Lake James*. Pee Dee did not contract away its right to bring an action under § 1983, but instead agreed as part of its contract for Medicaid reimbursement that all such claims would be pursued only through state administrative and judicial avenues. That is, Pee Dee's contracts do not involve a waiver of a constitutional right, but only the ancillary right to select a federal forum to pursue a statutory right. Given that a party can validly waive the right to sue altogether,

---

[17]In *Lake James* this court considered the fact that the fire department was aware of the right it was waiving and that it voluntarily signed the agreement with the advice of counsel. *Id.* at 281. Moreover, the court found "the limited waiver that the fire department gave was not adverse to public policy." *Id.* On the contrary, the court noted that it was consistent with public policy to provide reliable fire protection to the community. *Id.*

including the right to sue to vindicate a constitutional right, the decision by Pee Dee to foreclose use of a federal forum for its statutory claim does not implicate the public policy concerns noted in *Town of Newton*.

## IV.

Having found that healthcare providers have a right under § 1983 and that such a right can be limited by contract, we finally turn to the issue of whether the particular forum-selection clause found in the contract between Pee Dee and SCDHHS is enforceable.

A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). A clause is unreasonable if (1) it was the result of "fraud or overreaching"; (2) "trial in the contractual forum [would] be so gravely difficult and inconvenient [for the complaining party] that he [would] for all practical purposes be deprived of his day in court"; or (3) "enforcement would contravene a strong public policy of the forum in which suit is brought[.]" *Id.* at 15-18; *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996).

Pee Dee appears to argue only that enforcement of the forum-selection clause would contravene a strong public policy of the federal courts to hear federal claims. We note, however, that Medicaid disputes are commonly heard in state administrative tribunals and no federal policy bars state courts from hearing federal claims. Therefore, we find no reason not to enforce the forum-selection clause.

## V.

Because we find that § 1396a(bb) creates an enforceable right under § 1983, but that Pee Dee voluntarily waived its right to a federal forum by agreeing to be bound by the forum-selection clause in its contract with SCDHHS, the judgment of the district court is

*AFFIRMED.*