## Savoia v. Wal-Mart Stores Inc.

C.P. of Chester County, No. 2014-00746

*Brian M. Andris*, for plaintiffs.
*Michael T. Miano*, for defendants JTH Tax, Inc.
*Heather C. Giordanella*, for defendants Wal-Mart Stores, Inc.

Tunnell, *J.*, Aug. 21, 2014—

## ORDER

And now, this 21st day of August, 2014, upon consideration of the preliminary objections of defendants JTH Tax, Inc. d/b/a/ Liberty Tax Service ("Liberty") and DAT, LLC ("DAT") to plaintiffs' second amended complaint, and the responses and supplemental briefing in response thereto, it is hereby ordered and decreed that defendants' objection in the nature of a demurrer based

upon improper venue is sustained and any and all claims as against defendants Liberty and DAT are dismissed.[1]

---

1. This action stems from an alleged breach of the Franchise Agreement entered into between plaintiffs Christopher Savoia and Savoia Enterprises, Inc. (collectively "Savoia") and defendants Liberty Tax and DAT, the alleged agent of Liberty (collectively "Liberty defendants.") Plaintiffs initiated this action on January 30, 2014 by filing a complaint and emergency petition for injunctive relief wherein they sought to enjoin defendants from operating a competing Liberty kiosk within plaintiffs' purported franchise territory. On that same day, the court issued a special injunction order enjoining defendants from operating any Liberty franchise at the disputed location (Oxford Wal-Mart Supercenter Store #5795). On February 18, 2014, following a conference with counsel for all parties, the court dissolved the special injunction order. Thereafter, the Liberty defendants filed preliminary objections to the complaint and in response plaintiffs filed a first amended complaint. The Liberty defendants then filed preliminary objections to the first amended complaint.

The Liberty defendants' preliminary objections included an objection in the nature of demurrer based upon a forum selection clause contained in the parties' Franchise Agreement (the "agreement"). Plaintiffs responded to the preliminary objections, and thereafter by order dated April 30, 2014, the court directed the parties to complete depositions and submit supplementary briefs on the limited question of whether venue in this court is proper. Following the court's order, plaintiffs filed a second amended complaint. The Liberty defendants renewed their preliminary objections and the question of venue is now before the court.

The Liberty defendants contend that the forum selection clause contained in plaintiffs' agreement bars them from initiating the instant action in Pennsylvania. The parties' agreement provides as follows:

15. GOVERNING LAW

a. Virginia Law. . . . Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto.

b. Jurisdiction and Venue. . . . In any suit brought against us, including our present and former employees and agents, which in any way relates to or arises out of this agreement, or any dealings of the parties hereto, venue shall be proper only in the federal court located nearest our National Office (presently in the U.S. District Court in Norfolk, Virginia), or if neither subject matter or diversity jurisdiction exists, in the city or county state court located where our National Office is (presently the City of Virginia Beach, Virginia).

(7-11 Franchise Agreement, dtd 9/11, at 16).

At page 18 of the agreement, one page before the signature page which plaintiff Christopher Savoia executed, the agreement reads:

21. GUARANTY

In addition, the signatures of all individuals below, in any capacity, also constitute their personal joint and several agreement to perform

all of the obligations in and relating to this agreement, including, but not limited to, the obligations stated in *Paragraph 15 above concerning Governing Law, including but not limited to, the application of Virginia Law, the jurisdiction and venue clause....*

The court agrees that the broad language of the forum selection clause is enforceable as to all claims asserted against the Liberty defendants. The choice of law provision and forum selection clause are written in broad terms. The choice of law provision states: "Virginia law governs all claims which in any way relate to or arise out of this Agreement or any of the dealings of the parties hereto." Similarly, the forum selection clause states that in any suit "brought against us [the Liberty defendants], including our present and former employees and agents, which in any way relates to or arises out of this agreement, or any dealings of the parties hereto ..." shall be brought in Virginia. Counts I, II, III, IV, V each make reference to the Agreement and seek recovery either under the terms of the agreement or for improper dealings involving the agreement and its parties. As such, they are subject to the terms of the forum selection clause included in the agreement. *See IDT Corp. v. Clariti Carrier Servs., et al.,* 772 A.2d 1019, 1023 (Pa. Super. 2001).

Virginia Law Governs Interpretation of the Forum Selection Clause.

The interpretation of forum selection clauses, except in certain circumstances, is governed by state law. *General Engineering Corp. v. Martin Marietta Alumina,* 783 F.2d 352, 356-57 (3d Cir. 1986). In this case, the parties' agreement contains a Virginia choice of law provision as acknowledged by both parties. Both parties also agree that section 187 of the Restatement (Second) of Conflict of Laws governs the choice of law analysis. Section 187(1) states:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

The parties' dispute — competition within the franchise territory — is one that the parties could have, and did, explicitly address in the agreement. Accordingly, the court does not have to ascertain whether an exception under section 187(2) applies. *See Synthes USA Sales, LLC v. Harrison,* 2013 Pa. Super 324 (2013); *Miller v. Allstate Ins. Co.,* 763 A.2d 401, 403 (Pa. Super. 2000) (holding court need not decide which state had most significant contacts due to parties' choice of law provision in insurance contract).

The Parties' Forum Selection Clause is Enforceable.

Forum selection clauses are presumptively valid and enforceable. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 589 (1991). While private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, a court in which venue is proper and which has jurisdiction should decline to proceed with the case "when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation." *Central Contracting Co. v. C.E. Youngdahl & Co.,*

418 Pa. 122, 133, 209 A.2d 810, 816 (1965); *see also Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926 (Pa. Super. Ct. 2000) (using test laid out in *Central Contracting* to determine validity of forum selection clause). Virginia courts likewise hold forum selection clauses to be "prima facie valid" and enforceable, unless "the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power." *Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.* 240 Va. 337, 342 (1990). Under Virginia law, "[a] forum selection clause will be unreasonable if its formation was induced by fraud or overreaching, the complaining party will be deprived of her day in court because of inconvenience or unfairness of the forum, the applicable law may deprive the plaintiff of a remedy, or the enforcement of the clause would contravene a strong public policy of the forum state." *Smith v. AEGON USA, LLC*, 770 F. Supp. 2d 809, 811 (W.D. Va. 2011); *see also Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. Va. 1996) (citing *Carnival Cruise Lines*, 499 U.S. at 595).

Plaintiffs argue that they did not freely agree upon the venue provision and enforcement of that clause would be unreasonable — or as plaintiffs put it, unfair. The record developed during the court ordered discovery demonstrates otherwise.

Plaintiffs Freely Agreed to the Forum Selection Clause.

Plaintiffs' assertions that Savoia, a non-lawyer, did not know of, or understand the significance of, the forum selection clause and thus could not have freely entered into the agreement regarding venue are contradicted by the record. Savoia admitted to reviewing the agreement cover to cover, including the forum selection clause, prior to signing it. (Savoia Dep. 45:2-46:23). Thus, plaintiffs had notice of the forum selection clause when Savoia signed the agreement.

Even, if Savoia failed to read the agreement, that fact does not preclude enforcement of an otherwise valid venue provision. Under Virginia law in the absence of fraud, duress, or mutual mistake, an individual "having the capacity to understand a written document who signs it after reading it, or who signs it without reading it, is bound by the signature." *First Nat. Exch. Bank of Virginia v. Johnson*, 233 Va. 355 S.E.2d 326, 329-30 (1987). "This principle is particularly pertinent when the party sought to be bound is a sophisticated business person involved in an arm's length transaction." *Fairfax Co. of Virginia, LLC v. Samson Realty, LLC*, 74 Va. Cir. 141, 148 (2007). Savoia is just that — a sophisticated business person.

As detailed in the Liberty defendants' brief, Christopher Savoia is an experienced businessman who has personally handled numerous businesses, including the incorporation and dissolution of such entities. In fact, he was sophisticated and resourceful enough to seek legal advice with regard to the formation of one such business. If he did not understand the terms of this agreement, he could have taken further action to ensure that he came to such an understanding. If he did not do so, that was of his own choosing and his decision to proceed nonetheless in executing the agreement does not mean that it was not a freely agreed upon term

by the parties. Nor does the evidence suggest that the Liberty defendants induced plaintiffs into agreeing to the forum selection clause through fraud. The Liberty defendants did not force Savoia into any business relationship that he did not otherwise want to be a part of.

Furthermore, "absent evidence of a bad-faith motive, disparity in bargaining power does not render a forum selection clause fundamentally unfair." *Garrett v. Gulf Stream Coach, Inc.*, 2009 U.S. Dist. LEXIS 29348, *12-13 (E.D. Va. Apr. 7, 2009) (citing Carnival Cruise Lines, 499 U.S. at 593-594). The record does not indicate any bad-faith motive and, plaintiffs' argument that the forum selection clause should be invalidated because of some alleged disparate bargaining power is unpersuasive. *See Senture, LLC v. Dietrich*, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008) (rejecting such argument finding that if party has option to not enter contract, it will not be considered contact of adhesion); *see also Brenco Enters. v. Takeout Taxi Franchising Sys.*, 2003 Va. Cir. LEXIS 86, *58-59 (Va. Cir. Ct. May 2, 2003) (finding no evidence of disparity in bargaining power between parties even with party being in position of either taking or leaving the offer made by franchisor with little or no room to negotiate). Savoia was not one to "take it or leave it" when it came to his business relationship with the Liberty defendants. During the course of the parties' discussions about the agreement, Savoia negotiated several changes to its terms including a special stipulation allowing plaintiffs to operate a separate and distinct business from plaintiffs' franchise, an exclusion of certain pre-existing clients from the agreement's non-compete and a modification of the defined franchise territory. *See* Savoia Dep., 50:15 — 51:24; Schedule C and Schedule C-1 to the agreement. The agreement was not an agreement that the plaintiffs were without power to amend, as evidenced by the fact that plaintiffs amended the agreement three times. Plaintiffs could have rejected the agreement or attempted to negotiate its terms further, but chose not to do so.

Enforcement of the Forum Selection Clause is Reasonable.

The Virginia courts are available to plaintiffs and can do substantial justice. Plaintiffs may file suit against the Liberty defendants in either the Virginia Circuit Court in Virginia Beach, Virginia, or in the Federal Court for the Eastern District of Virginia in Norfolk, Virginia. Either of these forums will provide plaintiffs adequate recourse should their allegations prove true. The agreement is governed by Virginia law and Virginia courts are more familiar with Virginia law than Pennsylvania courts. *See Youngblood v. JTH Tax Servs.*, 2006 U.S. Dist. LEXIS 49478, at *15 (W.D. Tex. July 17, 2006) ("the Virginia court is better equipped to try the case because it is governed by Virginia law"). Savoia has sufficient contacts with Virginia (specifically related to the agreement) to subject plaintiffs to the jurisdiction of the Virginia courts.

"Inconvenience alone is not sufficient grounds to avoid the application of a forum selection clause." *BHP Int'l Inv., Inc. v. Online Exch., Inc.*, 105 F. Supp.2d 493 (E.D. Va. 2000). Similar to Pennsylvania law, to defeat a forum selection clause under Virginia law, a party must demonstrate that it will deprive that party of his or her day in court. *See*

*Carnival Cruise Lines*, 499 U.S. at 595; AEGON, 770 F. Supp. 2d at 811; *Allen*, 94 F.3d at 928. That is, plaintiffs must show that trial in Virginia would be "so gravely difficult and inconvenient" that plaintiffs would for all practical purposes be deprived of their day in court. *See Torres v. SOH Distrib. Co.*, 2010 U.S. Dist. LEXIS 47448, *12-13 (E.D. Va. May 13, 2010) (citing *Pee Dee Health Care, P.A. v. Sanford*, 509 F.3d 204, 213-14 (4th Cir. 2007)).

Litigating this case in Virginia is not so inconvenient or burdensome that it would deprive plaintiffs an opportunity to be heard. Plaintiffs' argument that proceeding in a Virginia court would be inconvenient is undermined by Savoia's testimony. Savoia testified that he has made numerous visits to Virginia in connection with the Franchise Agreement. *See* Savoia Dep., 66:21 — 68:14. Savoia visited Liberty headquarters in Virginia when he first became a franchisee in 2006, and travelled to Virginia five or six additional times since then — each time related to Liberty. *Id.* He also visited Virginia once or twice prior to becoming a Liberty franchisee. *Id.* In sum, Savoia has visited Virginia approximately nine times, including seven times since 2006 all related to the Liberty franchise. Of those visits, Savoia paid for his own expenses all but once. *See* Savoia Dep., 111:12-24.

The Liberty defendants did not initiate this action; plaintiffs did. They chose to bring this action in Pennsylvania despite the existence of an agreement that has a clear and unambiguous forum selection clause. Any costs and fees incurred to date are the result of that decision, not because of any conduct on the part of the Liberty defendants, and should not preclude enforcement of an otherwise valid agreement. The court does not find the inconvenience to plaintiffs that may result if the action is required to be brought in Virginia would be so substantial that it should disregard the forum selection clause.

Plaintiffs' remaining arguments against enforcement of the venue provision are likewise unpersuasive.

Finally, plaintiffs' addition of Wal-Mart as a defendant does not defeat the forum selection clause, nor did they argue as much. *See Insight Holding Grp., LLC v. Sitnasuak Native Corp.*, 685 F. Supp. 2d 582, 589 (E.D. Va. 2010)(holding forum selection clause enforceable; stating result not any different merely because case includes two additional claims against a defendant who is not a party to the agreements containing forum selection clauses").

The preliminary objections asserting improper venue are sustained.