QUATTLEBAUM, Circuit Judge, dissenting:
 

 One of the bedrock principles of our country is the freedom of parties, public and private, to enter into agreements without fear that courts will re-write them if one side has a change of heart. Under this principle, parties have a right to rely on the certainty of contracts entered into knowingly and voluntarily. In my view, the majority opinion undermines those important principles. While I join my colleagues in affirming the importance of the First Amendment and the public's interest in exposing police misconduct, such affirmation does not require us to find unenforceable the non-disparagement provision in the settlement agreement between Overbey and the defendants. Overby entered into the settlement agreement knowingly and voluntarily, and the interests in enforcing it outweigh any countervailing interests. Accordingly, I respectfully dissent.
 

 I.
 

 In 2013, Overbey filed a lawsuit alleging egregious police misconduct. She had every right to a public trial on the allegations. She also had the freedom to speak about the case before, during and after the suit. Defendants in the suit denied the allegations of misconduct. They likewise had the right to defend themselves in a public trial and to comment on the case.
 
 [1]
 

 However, as happens in the vast majority of cases, the parties gave up those rights. Rather than resolve their dispute publicly in a court of law, they decided to resolve the dispute privately through a negotiated settlement. With both sides represented by counsel, the parties entered into a written settlement agreement. As part of that agreement, the defendants agreed to pay Overbey $63,000. In return, Overbey agreed to dismiss her claims and, pursuant to the non-disparagement provision, not to comment about the allegations in her suit or the settlement process. She further agreed that if she violated the non-disparagement provision, the City was entitled to the return of $31,500.
 

 Later, the
 
 Baltimore Sun
 
 published an article about the settlement. It included a comment made by the City Solicitor about Overbey during the settlement approval hearing. On the
 
 Sun
 
 's website, members of the public made several comments critical of Overbey. She responded on the website with several posts about her case. At the time of her posts, the City had not yet paid the settlement amounts. The City sent Overbey a check for only $31,500. The City-believing Overbey's comments to the
 
 Sun
 
 violated the non-disparagement provision-refused to send the additional $31,500. Overbey does not dispute that her public comments violated the agreement. Instead, she seeks to excuse her admitted breach by claiming that the non-disparagement provision in the agreement is unenforceable. As a result, she seeks to compel the City to pay the full $63,000 to her. Since she has already received $31,500, she seeks the $31,500 she previously agreed to give up if she spoke about the case.
 

 II.
 

 Prior to entering into the settlement agreement, Overbey had a constitutional right to speak about the allegations in the lawsuit. The question for us is whether Overbey waived that right by agreeing to the non-disparagement provision, and, if so, whether her waiver is enforceable. In explaining this issue, we have stated that "a contract will be enforced unless the interest promoted by its enforcement is outweighed by the public policy harms resulting from enforcement."
 
 Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty.
 
 ,
 
 N.C.
 
 ,
 
 149 F.3d 277
 
 , 280 (4th Cir. 1998) ; (citing
 
 Town of Newton v. Rumery
 
 ,
 
 480 U.S. 386
 
 , 392,
 
 107 S.Ct. 1187
 
 ,
 
 94 L.Ed.2d 405
 
 (1987) and
 
 Restatement (Second) Contracts
 
 § 178(1) (1981) ). While the law does not presume the waiver of constitutional rights, it also does not render the contract per se unenforceable "simply because a contract includes the waiver of a constitutional right."
 
 Id
 
 . Thus, "[w]here a party knowingly and willingly enters into an agreement that waives a constitutional right, the agreement is enforceable so long as it does not undermine the public's interest in protecting the right."
 
 [2]
 

 Pee Dee Health Care, P.A. v. Sanford
 
 ,
 
 509 F.3d 204
 
 , 213 (4th Cir. 2007). Here, the non-disparagement provision does not.
 

 A.
 

 To examine whether there are any public policy harms implicated by enforcement of the non-disparagement provision, it is critical to look to the specific circumstances and the harm caused by enforcing this settlement's non-disparagement provision.
 
 See
 

 Rumery
 
 ,
 
 480 U.S. at 392-94
 
 ,
 
 107 S.Ct. 1187
 
 (using a fact specific, case-by-case approach to determine whether a defendant's waiver of his statutory right to sue was enforceable). Overbey broadly asserts that the non-disparagement provision harms the public policy favoring debate about public issues and the need to cautiously mistrust government power. No one would deny the importance of those issues. But it is not enough to simply posit general constitutional principles. If that were enough, no confidentiality agreement or non-disparagement provision could ever stand.
 
 See
 

 Leonard v. Clark
 
 ,
 
 12 F.3d 885
 
 , 892 n.12 (9th Cir. 1993). Instead, the proper inquiry is how much those public policy interests are impaired, if at all, based on the applicable record. Looking at the circumstances of this case, Overbey overstates the impairment of any potential public policy interests.
 

 First, it is important to note the narrow scope of the waiver. Under the non-disparagement provision, Overbey agreed not to speak about the facts of her specific case. The waiver did not restrict her from speaking about the Baltimore Police Department or police misconduct generally. Nor did it restrict her from speaking on a myriad of other public issues. It simply limited her ability to speak publicly about her case.
 

 Second, the limitations in the non-disparagement clause did not actually bar Overbey from speaking about her case. There were just financial consequences-to which she agreed-of her choosing to speak. Under the agreement, she had a choice. She could abide by her promise not to talk about the case. If she did that, she would receive the full $63,000. Or she could do what she did-talk about the case. The consequence was that, since Overbey made that latter choice, the City was entitled to keep $31,500 of the $63,000 settlement amount.
 

 Third, even without her public comments, the detailed allegations in Overbey's complaint and in the Department of Justice's 2016 report on police misconduct in Baltimore contain extensive information on this important issue. Critically, all of that information remains public.
 
 [3]
 
 Likewise, the terms of the settlement agreement were made and remain public. The non-disparagement provision does not remove any of that information about police misconduct in Baltimore from the review and scrutiny of the public. It remains in the
 public square for discourse and debate. Thus, even if Overbey decided not to speak because of the non-disparagement provision, the public's interests would only have been minimally harmed.
 

 Last, any impairment of the public's interests must be considered in relation to Overbey's other rights. Part and parcel with Overbey's right to speak is her right not to speak. Plainly, even without the non-disparagement provision, Overbey had the right not to speak.
 
 [4]
 
 If she had done that, the public's interest would have been equally impaired. The public's interests cannot legitimately be harmed by Overbey doing by written agreement what was her right in the first place.
 

 B.
 

 On the other hand, the defendants have significant and legitimate interests in the enforcement of the non-disparagement clause. First, they have an interest in the finality of the litigation.
 
 See
 

 Leonard
 
 ,
 
 12 F.3d at 891
 
 (recognizing the public's interest in the finality of collective bargaining agreements as one of the public policies favoring enforcement of the constitutional waiver not to speak). Litigation serves a vital role in our legal system, but, for those in the midst of it, it is often unpleasant, expensive and distracting. For those and many other reasons, litigants at times decide that the best course for them is to compromise on a settlement rather than forging forward to trial. The defendants did just that in this case. They agreed to put the dispute behind them by entering into an agreement with terms that furthered their interest in finality. The non-disparagement provision was one of the terms.
 

 Second, by agreeing to the settlement, the defendants gave up their opportunity for vindication by a judge or jury. Of course, there is no guarantee how the case would have turned out had it continued. That uncertainty is one of the reasons parties often agree to a settlement. But having given up the opportunity to be exonerated, the defendants have an interest in Overbey's accusations, which they denied, ending. The non-disparagement clause furthered this legitimate interest as well.
 

 Third, the defendants have an interest in the certainty of their contract. As alluded to above, parties have a right to expect that plain and unambiguous terms of the contracts to which they enter, like the ones here, will be enforced
 
 . See
 

 Hemstreet v. Spiegel
 
 ,
 
 Inc.
 
 ,
 
 851 F.2d 348
 
 , 350 (Fed. Cir. 1988) (holding "there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into."). During the pendency of the
 case, when it was uncertain whether she would be awarded any money, Overbey decided it was a good idea to limit her public comments in return for additional settlement payments from the defendants. After the settlement, Overbey, with some money in hand, decided she no longer wanted to limit her comments. Despite that, she now seeks to not only keep the money she received, but also compel the City to pay the rest. Overbey seeks through the courts to re-write the agreement so that she will receive all the benefits of the agreement, but not all of the burdens. This is not the proper role for courts.
 
 [5]
 

 In conclusion, the interests of the defendants in enforcing the agreement is substantial. In agreeing with both district court orders below granting summary judgment, I believe the interests of the defendants in enforcing the non-disparagement provision outweigh the public's interests in voiding it. Therefore, I part ways with my good colleagues in the majority. I would affirm the district court's dismissal of the case.
 
 [6]
 

 The conduct by the Baltimore Police Department as alleged by Overbey is abhorrent. I express no opinion on which party was likely to prevail below or minimize in any way the injuries allegedly suffered by Overbey.
 

 The majority does not address Overbey's claim that she did not knowingly and voluntarily enter into the non-disparagement provision. But Overbey's argument that she did not understand that the waiver would apply to her specific conduct is without merit. The non-disparagement clause prohibits discussion of opinions, facts or allegations about the case. Further, Overbey was represented by legal counsel throughout the litigation and settlement process. Last, a provision in the settlement agreement, labeled "Knowingly and Voluntary Act," stated that both parties represented they entered into the agreement voluntarily, with the advice of legal counsel and had adequate opportunity to investigate the subject matter of the agreement.
 

 The majority opinion acknowledges that Overbey's silence would not entirely foreclose debate on her experiences with law enforcement, but stresses that even so, the relevant public discourse cannot be considered "uninhibited" or "wide-open." Maj. Op. at 224 n.8. But that is not the issue. If it were, any limitation would fail. The issue is whether the public policy in promoting that discourse has been appreciably harmed.
 

 I find no Supreme Court or Fourth Circuit authority to support the majority's suggestion that Overbey had no recognizable right not to comment on this case. The majority is certainly correct that the First Amendment prevents the government from compelling individuals to express support for views to which they object. But citizens who have information on important issues are entitled to remain silent, or as the majority puts it, to abstain from speech.
 
 See
 

 Wooley v. Maynard
 
 ,
 
 430 U.S. 705
 
 , 714,
 
 97 S.Ct. 1428
 
 ,
 
 51 L.Ed.2d 752
 
 (1977) (holding that "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all."). The scarcity of cases when the government is not seeking to compel speech is likely due to the case and controversy requirement. Without government action, there is no case and controversy. But citizens have the freedom not to speak if they so choose. As Terence Mann said in initially rebuffing Ray Kinsella's request to come to Iowa in the well-known film
 
 Field of Dreams
 
 , "I don't give interviews, and I'm no longer a public figure. I just want to be left alone ...." To suggest this freedom does not exist would be unprecedented and take us into a land well beyond what even Orwell envisioned.
 

 Surprisingly, my good colleagues in the majority characterize this position as endorsing "hush money." Maj. Op. at 226. Harsh words for the principle that it is unfair for parties who enter agreements freely to later change their mind and seek to avoid the very terms to which they agreed. Perhaps a better description would be that Overbey cannot have her cake and eat it too.
 

 The majority also reverses the district court's order which concluded that Baltimore Brew had no standing to pursue its claims. For the reasons set forth by the district court, I dissent on this issue as well.
 
 See
 

 Overbey v. Mayor & City Council of Baltimore
 
 , No. CV MJG-17-1793,
 
 2017 WL 5885657
 
 , at *5 (D. Md. Nov. 29, 2017).