**LAKE JAMES COMMUNITY VOLUNTEER FIRE DEPARTMENT, INCORPORATED, Plaintiff–Appellee,**

v.

**BURKE COUNTY, NORTH CAROLINA, Defendant–Appellant.**

No. 97–1815.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1998.

Decided July 15, 1998.

278

ARGUED: Jim D. Cooley, Womble, Carlyle, Sandridge & Rice, Charlotte, North Carolina, for Appellant. Robert Crawford Ervin, Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A., Morganton, North Carolina, for Appellee. ON BRIEF: W. Clark Goodman, Katherine T. Lange, Womble, Carlyle, Sandridge & Rice, Charlotte, North Carolina, for Appellant.

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Reversed and remanded by published opinion. Judge NIEMEYER wrote the opinion, in which Chief Judge WILKINSON and Senior Judge CLARKE joined.

NIEMEYER, Circuit Judge:

We must decide whether to enforce an agreement made by a volunteer fire department not to sue a county for approving the transfer of certain fire protection areas to other fire departments. The district court refused to enforce the agreement as an unconstitutional condition requiring the fire department to waive its First Amendment right to petition the government. Because the agreement was entered into voluntarily, with the advice of counsel, and was in the public interest, we conclude that it is enforceable. Accordingly, we reverse and remand for further proceedings.

I

Lake James Community Volunteer Fire Department, Inc., is a North Carolina non-profit corporation organized to provide volunteer fire services in a rural area fire district pursuant to a contract with Burke County, North Carolina, and Chapter 69, Article 3A, of the North Carolina General Statutes (regulating fire protection in rural areas). Under North Carolina law, residents living outside cities or towns may vote to establish a fire protection district within their county by voting to pay a modest tax to the county for fire protection services in the district. See N.C. Gen.Stat. § 69–25.1. The county must thereafter provide fire protection to the fire protection district by (1) contracting to do so with the fire department of an incorporated city or town, with a non-profit volunteer fire department, or with the Department of Natural Resources and Community Development; (2) furnishing fire protection through its own fire department; or (3) a combination of the various options. See N.C. Gen.Stat. § 69–25.5. Any geographical change to an established fire protection district, whether by expansion or contraction, may be effected by a petition signed by two-thirds of the real property owners affected and must be approved by the fire protection commissioners of the district, the fire department under contract, and the county commissioners. See N.C. Gen.Stat. § 69–25.11.

Beginning in 1969, the Lake James Community Volunteer Fire Department (the "Fire Department") provided fire protection to the Lake James Fire District in western Burke County (the "County") pursuant to a contract with the County. But in June 1994, the firefighters at the Fire Department turned in their gear and refused to provide any fire protection services. This walk-out was prompted by an intracorporate dispute within the Fire Department's board of directors. Burke County promptly made arrangements with three neighboring fire departments—West End Fire Department, Oak Hill Fire and Rescue Protection Association, and the Town of Glen Alpine Fire Department. After eight days, the firefighters returned to duty, and the County and the Fire Department entered into a new 20–year fire protection services contract dated July 19, 1994. This 1994 contract provided that either party could terminate the contract, provided it gave 90–days' prior written notice.

The internal dispute within the Fire Department's board continued even after the 1994 contract was signed, leading to the board of directors' decision to disband the Fire Department and recommend dissolution

of the Lake James Fire District. In March 1995, the Fire Department sent a letter to the County, stating:

> Due to continuing problems with training, readiness and maintenance of equipment within the Lake James Community Fire Department, the Board of Directors of the Lake James Community Volunteer Fire Department voted today to void it's [sic] contract for fire service with Burke County, effective immediately. We ask the County to split the Lake James Community Fire District to provide fire protection to all of [sic] our residents.

In giving this notice, the Fire Department did not honor the 90–days' prior written notice provision of its 1994 fire protection contract with the County.

Burke County officials immediately made emergency calls to neighboring fire departments to obtain oral commitments for fire protection in the Lake James Fire District, and thereafter, in early April 1995, the County entered into three temporary service contracts, again with the West End, Oak Hill, and Glen Alpine fire departments. In August 1995, the County entered into long-term contracts with those departments, partitioning the Lake James Fire District among them.

In the wake of the Fire Department's actions, citizens in several defined areas of the Lake James Fire District submitted petitions to the County to transfer fire protection coverage from the Lake James Fire District to neighboring fire districts. The County received petitions from areas known as Holiday Shores, Powerhouse Road, and East Shores. The County Board of Commissioners approved the petitions, concluding that in each case the necessary two-thirds of the property owners approved the transfer. Holiday Shores transferred from the Lake James Fire District to the West End Fire District, while both Powerhouse Road and East Shores transferred to the Glen Alpine Fire District.

During this same period, the Fire Department circulated a plan of dissolution to its members. But after a complicated and messy attempt to dissolve failed, the Fire Department's directors who had voted to terminate its fire protection contract with the County resigned. In November 1995, new directors of the Fire Department began taking steps to revive the Fire Department and to open negotiations with the County for a new fire protection services contract. Because of the prior history and service interruptions, however, the County insisted that any contract with the Fire Department include a "Consent Provision" which required that the Fire Department agree "to allow" citizen groups to petition for transfer to other fire districts and that "any consent required by Chapter 69 with regard to such a petitioning process shall be presumed to have been given" by the Fire Department. The County also insisted on a provision that if the Fire Department reneged on its consent or "challenge[d] in the judicial system or otherwise the legality of the above-referenced Consent Provision," it would be breaching the contract. Although the Fire Department objected to these provisions as unconstitutional, the County insisted on them.

The Fire Department, acting on the advice of counsel, agreed to these terms and signed a contract with the County on February 26, 1996. When it returned the signed contract to the County, however, the Fire Department also enclosed a letter in which it again objected to the provisions, contending that they violated the Right to Petition Clause of the First Amendment and the analogous Open Courts Clause of the North Carolina Constitution. The letter stated that the Fire Department was forced "to choose between executing a contract which contains these unconstitutional provisions and going without any contract." The new contract was executed by both parties and became effective March 1, 1996.

In July 1996, the Fire Department filed this action, asserting a veto right granted to contracting fire departments under Chapter 69 of the North Carolina General Statutes and demanding that the County's approval of two of the three citizens' petitions granted by the County—the Powerhouse Road Petition and the East Shores Petition—be vacated. The County defended the suit, contending that the Fire Department had agreed to these petitions in its 1996 contract and had

waived its right to challenge them in court. It also filed a counterclaim to declare the Fire Department in breach of the 1996 contract.

On cross-motions for summary judgment, the district court held that the no-challenge provision in the 1996 contract was void as an unconstitutional condition. It concluded that the provision unreasonably infringed upon the Fire Department's right to petition the government since the provision did not serve any legitimate fire-protection purpose. As a result, the court vacated the County's approval of the Powerhouse Road and East Shores petitions. Finally, the court denied the County's motion for a summary judgment declaring the Fire Department in breach of the 1996 contract. This appeal followed.

## II

The question in this case is whether the Fire Department's agreement to consent to citizens' petitions and not to challenge them in court is enforceable. Any response to this question draws on the common-law contract principle that a contract will be enforced unless the interest promoted by its enforcement is outweighed by the public policy harms resulting from enforcement. *See Town of Newton v. Rumery*, 480 U.S. 386, 392 & n. 2, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); *Restatement (Second) Contracts* § 178(1) (1981). Moreover, simply because a contract includes the waiver of a constitutional right does not render the contract *per se* unenforceable. *See, e.g., Rumery*, 480 U.S. at 397, 107 S.Ct. 1187; *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972). But a waiver of constitutional rights in a contract might well heighten the scrutiny of its enforceability because the law does not presume the waiver of constitutional rights. *See Ohio Bell Tel. Co. v. Public Utils. Comm'n*, 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). The contractual waiver of a constitutional right must be a knowing waiver, must be voluntarily given, and must not undermine the relevant public interest in order to be enforceable. *See Overmyer*, 405 U.S. at 187, 92 S.Ct. 775; *Rumery*, 480 U.S. at 398, 107

S.Ct. 1187; *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Under these principles, courts have routinely enforced voluntary agreements with the government in which citizens have, for example, given up the right to sue through releases and covenants not to sue the government, *see Rumery*, 480 U.S. at 397–98, 107 S.Ct. 1187; the right to speak regarding government secrets through confidentiality agreements, *see Snepp v. United States*, 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980) (per curiam); the right to a jury trial through agreements to submit litigable disputes exclusively to arbitration, *see AT & T Techs., Inc. v. Communications Workers*, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994); the waiver of a jury trial in government contract cases, *Leasing Serv. Corp. v. Crane*, 804 F.2d 828 (4th Cir.1986); and the right to trial with its concomitant right to confront witnesses through plea agreements, *see Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Rumery*, 480 U.S. at 393, 107 S.Ct. 1187; *cf. Overmyer*, 405 U.S. at 187, 92 S.Ct. 775 (the right to notice and hearing between private parties through cognovit clauses).

In *Rumery*, for example, Rumery was arrested by the Town of Newton for witness tampering arising out of Rumery's conversations, on behalf of a friend, with a witness who was planning to testify against the friend on a sexual assault charge. When Rumery threatened to sue town officials based on the allegedly illegal arrest, the officials and Rumery entered into an agreement under which Rumery agreed to release the officials for liability in exchange for their dropping the charges against him. When Rumery later brought a federal suit against the public officials under 42 U.S.C. § 1983, the officials pleaded the release agreement. Rumery contended that the agreement was unenforceable as against public policy because it required him to waive his right to sue under § 1983. In rejecting this argument, the Supreme Court stated:

Because Rumery *voluntarily* waived his right to sue under § 1983, the public inter-

est opposing involuntary waiver of constitutional rights is no reason to hold this agreement invalid.

*Id.* at 394, 107 S.Ct. 1187 (emphasis added); *see also Bushnell v. Rossetti,* 750 F.2d 298, 301 (4th Cir.1984); *cf. Overmyer,* 405 U.S. at 187, 92 S.Ct. 775 (enforcing provisions in a private contract waiving Fourteenth Amendment rights of notice and hearing).

▐ Applying these principles to this case, it would appear that the Fire Department entered into the contract with the County knowingly and intelligently; that it did so voluntarily; and that its waiver of the statutory right to challenge fire district transfers does not undermine the relevant public interests.

The pertinent provisions of the 1996 contract between the County and the Fire Department were largely the product of two walk-outs by the Fire Department and of the County's need to ensure that its citizens have reliable fire protection. These historical circumstances undoubtedly put the Fire Department in a weak negotiating position for opposing the County's desire to give greater effect to citizens' petitions for alternative fire protection. But the record remains undisputed that the Fire Department was fully aware of what it was waiving and that it voluntarily signed the agreement. Indeed, both before and after executing the agreement, the Fire Department asserted that the waivers involved constitutional rights protected by the First Amendment and the North Carolina analogue. Moreover, the Fire Department's decision to sign was made with the advice of counsel.

While the record shows that the Fire Department protested the difficult choice it had to make, it voluntarily executed the contract. In the letter which it sent with the contract, it stated that it had been forced *to choose* between executing the contract and going without a contract. By executing and returning the contract, it clearly made that difficult choice. But making a choice rendered difficult because of a weak bargaining position of its own creation does not render the execution of the contract involuntary.

Moreover, the limited waiver that the Fire Department gave was not adverse to public policy. On the contrary, it was necessary to reestablish the Fire Department's good faith through effective fire protection and not through the exercise of a statutory veto right. Effective and reliable fire protection service is by definition in the public interest, and when that service becomes unreliable, the public justifiably has an interest in contracting with someone dependable. Giving effect to the public will about its choice of fire departments is consistent with, and not adverse to, the strong public policy of providing efficient and reliable fire protection to the community.

In addition, the County narrowly tailored the Fire Department's waiver of the right to sue in court to give effect to the Fire Department's agreement to consent to the citizens' petitions. Only to the extent that the Fire Department agreed to consent to the citizens' petitions did the Fire Department waive its right to sue.

Also, by agreeing to the consent provision and waiving its right to challenge it in court, the Fire Department did not give away anything that it had prior to entering into the 1996 contract. The Fire Department had voluntarily abandoned its 1994 contract with the County by illegally terminating it, and it did so with no prior notice to the County. When the Fire Department later changed its mind about its decision to dissolve, it had no right, constitutional or otherwise, to be the County's supplier for fire protection. It also had no statutory right at that time to veto the transfer of areas within the Lake James Fire District to other fire protection districts because that veto right is given by statute only to fire departments under contract with the County. Thus, when the County insisted during negotiations that the Fire Department agree not to exercise its statutory veto right, the County demanded nothing that it did not then have. The County could just as well have continued with its arrangements with the other three neighboring fire departments and refused altogether to contract with the Fire Department.

In these circumstances, we conclude that the consent provision and the related agreement not to challenge the consent provision in the 1996 contract between the Fire De-

partment and the County were made knowingly and voluntarily and did not, through their enforcement, undermine the relevant public interest. They are therefore enforceable. *See Leonard v. Clark,* 12 F.3d 885, 890 (9th Cir.1993) (union's voluntary execution of labor agreement waived its right to object to narrowly-tailored clause allegedly infringing upon free speech); *Berry v. Peterson,* 887 F.2d 635, 641 (5th Cir.1989) (covenant not to sue made by inmate enforceable because voluntary and not contrary to public policy).

The Fire Department argues that the agreement not to challenge the citizens' petitions violates the "unconstitutional conditions" doctrine as articulated in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In *Perry,* the Supreme Court held that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected . . . freedom of speech," even if the person has no entitlement to the benefit. *Id.* at 597, 92 S.Ct. 2694; *see also Board of County Comm'rs v. Umbehr,* 518 U.S. 668, 116 S.Ct. 2342, 2347, 135 L.Ed.2d 843 (1996). In *Perry,* the Court noted that "even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely." 408 U.S. at 597, 92 S.Ct. 2694. That principle, however, does not categorically preclude parties from negotiating contractual relationships that include waivers of constitutional rights such as a covenant not to sue.

Even under the unconstitutional conditions doctrine, the condition that a person give up his constitutional rights is balanced against the government's interest in promoting the efficiency of public services. *See Umbehr,* 116 S.Ct. at 2347–48. And with that balancing, the public interest in the circumstances of this case weighs heavily in favor of the citizens' right to select a reliable fire department of their choice. The Fire Department had abandoned its fire protection duties twice before, leaving the citizens in the Lake James Fire District without fire protection and requiring the County to react on an emergency basis. After the first time, the County resumed its relationship with the Fire Department only after insisting on a

clause requiring the Fire Department to give 90–days' prior written notice of termination. But notwithstanding the inclusion of that clause, the Fire Department again violated its agreement in March 1995, abandoning without notice its duty to provide fire protection. In negotiating a third contract with the Fire Department, the County had a compelling interest in insisting that the citizens be given the freedom of choosing whether to rely on the Fire Department's promises and in seeking finality to an ongoing dispute which had recurrently interrupted fire protection services. The no-challenge agreement goes no further than this. Left with the real risk of public injury, the County thus voted the public interest by including the covenant not to sue. It is true that the Fire Department had an interest in its continued existence to provide fire protection to the Lake James Fire District, but that interest would only have meaning if the Fire Department were willing to provide *reliable and uninterrupted* fire protection.

The Fire Department's argument against enforcement of the 1996 contract based on the North Carolina Constitution's Open Courts Clause, Article I, § 18, is rejected for the same reasons we reject its argument based on the United States Constitution. North Carolina recognizes, as do the parties, that North Carolina's constitutional rights may be waived under circumstances similar to those justifying waiver of a federal constitutional right. *See, e.g., State v. Petersilie,* 334 N.C. 169, 432 S.E.2d 832, 840 (1993).

For the foregoing reasons, we reverse the district court's conclusion that the waiver provisions of the 1996 contract are unenforceable. Because we conclude that they are enforceable, we also reverse the district court's order vacating the County's approval of the citizens' petitions transferring areas of the Lake James Fire District, and we vacate its order granting summary judgment to the Fire Department on the County's counterclaim. We remand the case for further proceedings in light of our holdings.

*REVERSED AND REMANDED.*