Lee Boyd MALVO, Petitioner,

v.

Randell MATHENA, Chief Warden,
Red Onion State Prison,
Respondent.

CIVIL ACTION NO. 2:13–cv–375, CIVIL
ACTION NO. 2:13–cv–376

United States District Court,
E.D. Virginia,
Norfolk Division.

Signed May 26, 2017

Craig Stover Cooley, Esq., Michael S. Arif, Esq., for Plaintiff.

Donald Eldridge Jeffrey, III, Esq., for Defendant.

### MEMORANDUM OPINION AND ORDER

Raymond A. Jackson, United States District Judge

Lee Boyd Malvo ("Petitioner") has submitted two motions pursuant to Title 28, United States Code, Section 2254 for writs of habeas corpus by a person in state custody ("§ 2254 motions"). Chief Warden Randall Mathena ("Respondent") filed a motion to dismiss Petitioner's § 2254 motions. Having thoroughly reviewed the Parties' filings in this case, the Court finds this matter is ripe for judicial determination. For the reasons set forth below, Respondent's motion to dismiss is **DENIED** and Petitioner's § 2254 motions are both **GRANTED.**

### I. PROCEDURAL HISTORY

On December 18, 2003. a jury in Chesapeake Circuit Court convicted Petitioner, a juvenile, of two counts of capital murder and one count of using a firearm during

the commission of a felony. ECF No. 24 (2:13cv375). On March 10, 2004, the Chesapeake Circuit Court sentenced Petitioner to one term of life imprisonment on each capital murder conviction, and three years of imprisonment on the firearm conviction, for a total incarceration sentence of two terms of life imprisonment, plus three years. *Id.* Under Virginia law, because Petitioner was sentenced to a term of incarceration for a felony offense committed after January 1, 1995, he was not eligible for parole. *See* Va. Code § 53.1–165.1.

On October 26, 2004, in Spotsylvania County Circuit Court, Petitioner pled guilty through an *"Alford* plea" to one count of capital murder, one count of attempted capital murder, and two counts of using a firearm in the commission of a felony. ECF No. 38, Ex. 1 at 7 (2:13cv376). As part of his plea agreement in the Spotsylvania case, Petitioner agreed to "be sentenced to life in prison without parole" for the capital murder conviction and the attempted capital murder conviction. ECF No. 38, Ex. 1 at 6 (2:13cv376).

That same day, the Spotsylvania County Circuit Court sentenced Petitioner to life imprisonment on the capital murder conviction, life imprisonment on the attempted capital murder conviction, three years of imprisonment on the first firearm conviction, and five years of imprisonment on the second firearm conviction. ECF No. 38, Ex. 1 at 45 (2:13cv376). The total sentence imposed was two terms of life imprisonment, plus eight years. Again, because Petitioner was sentenced to a term of incarceration for a felony offense committed after January 1, 1995, he was not eligible for parole. *See* Va. Code § 53.1–165.1.

On June 25, 2013, Petitioner filed two motions for writs of habeas corpus under 28 U.S.C. § 2254 in the Western District of Virginia. ECF No. 1 (2:13cv375, 2:13cv376). On July 8, 2013, both motions were transferred from the Western District of Virginia to the Eastern District of Virginia. ECF No. 3 (2:13cv375, 2:13cv376). The first motion addresses Petitioner's sentences in the Chesapeake Circuit Court.[1] The second motion addresses Petitioner's sentences in the Spotsylvania County Circuit Court.[2]

On June 20, 2014, this Court denied both of Petitioner's § 2254 motions. ECF No. 24 (2:13cv375); ECF No. 21 (2:13cv376). Thereafter, Petitioner appealed both denials to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). ECF No. 26 (2:13cv375); ECF No. 23 (2:13cv376). On March 9, 2015, the Fourth Circuit consolidated the cases for review. ECF No. 32 (2:13cv375); ECF No. 29 (2:13cv376). In January 2016, the United States Supreme Court ("Supreme Court") decided *Montgomery v. Louisiana,* —— U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), which directly affects Petitioner's § 2254 motions. The Fourth Circuit then remanded Petitioner's appeals to this Court for further consideration in light of *Montgomery.* ECF No. 36 (2:13cv375); ECF No. 30 (2:13cv376).

This Court ordered the parties to file briefs discussing their respective positions in light of *Montgomery.* ECF No. 40 (2:13cv375); ECF No. 34 (2:13cv376). On August 15, 2016, both parties filed their respective briefs and Respondent filed a motion to dismiss. ECF Nos. 41, 42 (2:13cv375); ECF Nos. 35, 36 (2:13cv376). The parties have also filed supplemental briefings on the issue of exhaustion of state remedies. ECF Nos. 49, 52 (2:13cv375); ECF Nos. 43, 46 (2:13cv376). On April 5, 2017, this Court held oral argument on the motions.

---

1. Court filings related to this motion are docketed under case number 2:13cv375.

2. Court filings related to this motion are docketed under case number 2:13cv376.

Petitioner argues that, following the Supreme Court's decisions in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) and *Montgomery v. Louisiana*, his sentences in both Chesapeake Circuit Court and Spotsylvania County Circuit Court violate the Eighth Amendment to the U.S. Constitution. Therefore, Petitioner requests that this Court vacate his life sentences and order new sentencing proceedings in both Chesapeake Circuit Court and Spotsylvania County Circuit Court, during which each court would need to consider the factors set forth in *Miller* and *Montgomery*.

Respondent makes four arguments against Petitioner's § 2254 motions. The first two arguments apply to both of Petitioner's cases. Respondent's third argument is specific to Petitioner's sentences in Chesapeake Circuit Court. Respondent's fourth argument is specific to Petitioner's sentences in Spotsylvania County Circuit Court.

First, Respondent argues that *Miller* and *Montgomery* do not apply to Petitioner's sentences because Virginia's life-without-parole sentencing scheme is not mandatory. Second, Respondent argues that Petitioner's crimes are so heinous that life-without-parole sentences are warranted. Third, regarding Petitioner's Chesapeake case, Respondent argues that Petitioner received an individualized sentencing proceeding that meets the requirements of *Miller* and *Montgomery*. Finally, regarding Petitioner's Spotsylvania case, Respondent argues that Petitioner waived his right to challenge his sentences when he pled guilty in that case.

## II.   LEGAL STANDARDS

### A.   Exhaustion

Section 2254 of Title 28 of the United States Code governs post-conviction relief for prisoners in custody pursuant to a state court judgment. 28 U.S.C. § 2254.

District courts must entertain § 2254 motions "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Additionally, a § 2254 motion cannot be granted unless the petitioner has first exhausted all remedies available in state court. 28 U.S.C. § 2254(b). This exhaustion requirement does not apply, however, if no state corrective process is available, or if such a process would be ineffective in protecting the petitioner's rights. *Id.*

### B.   *Miller* and *Montgomery*

In *Miller v. Alabama*, the Supreme Court decided the constitutionality of sentencing juvenile offenders to life imprisonment without parole. 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407. This case involved two juvenile offenders (one from Alabama and one from Arkansas) who had been sentenced to life imprisonment without the possibility of parole. *Id.* at 2460. In neither state did the court have discretion to impose a different punishment. *Id.*

■   In analyzing whether such a penalty scheme violates the Constitution, the Supreme Court first noted that " 'the concept of proportionality is central to the Eighth Amendment.' " *Id.* at 2463 (quoting *Graham v. Florida*, 560 U.S. 48, 59, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010)). Therefore, to comport with the Constitution, the punishment for crimes must be proportioned, not only to the type of offense, but also to the age of the offender. *Id.* at 2462.

■   The Court found that juveniles are constitutionally different from adults for purposes of sentencing "[b]ecause juveniles have diminished culpability and greater prospects for reform," which makes them "less deserving of the most severe punishments." *Id.* at 2464. In light of this difference, the Eighth Amendment

requires that sentencing courts consider the juvenile's youth and its attendant characteristics when imposing life-without-parole sentences. *Id.* at 2471. The Court explained as follows:

Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id.* at 2468.

■ Therefore, the *Miller* Court held that the mandatory life-without-parole penalty schemes in Alabama and Arkansas violated the Eighth Amendment because they "prevent the sentencer from considering youth and from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Id.* at 2458. Proportionality requires an "individualized sentencing" before a court can impose "the law's most serious punishments," including life imprisonment without parole. *Id.* at 2471.

In *Montgomery v. Louisiana,* the Supreme Court addressed the retroactivity of its holding in *Miller.* 136 S.Ct. 718. In 1963, a juvenile offender was tried for murder and the jury returned a verdict of "guilty without capital punishment." *Id.* at 725. Under state law, this verdict required the court to impose a life-without-parole sentence, and the sentence was automatic upon the jury's verdict. *Id.* at 725–26. After *Miller* was decided, the defendant sought collateral review of his life-without-parole sentence. The Louisiana Supreme Court denied his motion, finding that the rule announced in *Miller* was not retroactive. In *Montgomery,* the U.S. Supreme Court reversed that ruling and held that *Miller* is retroactive on collateral review. *Id.* at 736.

In *Montgomery,* the Court explained the full scope of its holding in *Miller.* The Court took care to emphasize that, among the juveniles who will receive sentences of life imprisonment, those who will not have the opportunity for parole should be few. *See id.* at 726. A sentencing court must consider more than just the juvenile offender's age before imposing life imprisonment without parole. *Id.* at 734. Such a penalty, the Court intimated, must be the result of a sentencing hearing in which the sentencer considers whether the crime committed reflects "irreparable corruption" on the one hand, or "the transient immaturity of youth" on the other. *Id.* at 734–35. The Court explained as follows:

The [*Miller*] Court recognized that a sentencer might encounter the rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life without parole is justified. But in light of "children's diminished culpability and heightened capacity for change," *Miller* made clear that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."

*Miller,* then, did more than require a sentencer to consider a juvenile offend-

er's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects " 'unfortunate yet transient immaturity.' " Because *Miller* determined that sentencing a child to life without parole is excessive for all but " 'the rare juvenile offender whose crime reflects irreparable corruption,' " it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth . . . .

A hearing where "youth and its attendant characteristics" are considered as sentencing factors is necessary to separate those juveniles who may be sentenced to life without parole from those who may not. The hearing does not replace but rather gives effect to *Miller's* substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity.

*Id.* at 733–35 (citations omitted).

Finally, the *Montgomery* Court explained that states can remedy *Miller* violations either by resentencing the petitioners in accordance with *Miller* and *Montgomery,* or by allowing the petitioners to be considered for parole. *Id.* at 736.

### III. DISCUSSION

#### A. Exhaustion

Both parties agree that the state corrective process available to Petitioner would

be ineffective to protect Petitioner's rights. ECF No. 49 at 2–8, ECF No. 52 at 1–2 (2:13cv375); ECF No. 43 at 2–8, ECF No. 46 at 1–2 (2:13cv376). This Court agrees.

█ The Virginia Supreme Court recently ruled that a *Miller* violation "cannot be addressed by a motion to vacate filed years after the sentence became final." *Jones v. Commonwealth,* 293 Va. 29, 795 S.E.2d 705, 720 (2017). Although a *Miller* violation can be addressed in a state habeas proceeding, such a petition must be timely. *Id.* at 719–20. According to Virginia Code § 8.01–654(A)(2), a state habeas petition attacking a criminal conviction or sentence "shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." These deadlines have expired. Therefore, Petitioner is exempted from the exhaustion requirement. *See Ross v. Fleming,* 2016 WL 3365498, *2, 2016 U.S. Dist. LEXIS 78500, *5 (W.D. Va. June 16, 2016) (reaching the same conclusion).

#### B. Whether *Miller* and *Montgomery* Apply to Petitioner's Cases

Respondent first argues that the requirements of *Miller* and *Montgomery* do not apply to Petitioner's cases.[3] ECF No. 54 at 1 (2:13cv375). This argument consists of two parts. First, Respondent claims that Virginia's life-without-parole penalty scheme is not a mandatory scheme. *Id.* Under Virginia law, life imprisonment without parole is the only sentence available for juveniles convicted of capital murder and attempted capital murder. *See* Va. Code §§ 18.2–10(a), 18.2–31. Nevertheless, Respondent cites a state statute that gives sentencing courts the option of suspending a defendant's sentence in whole or in part.[4]

---

**3.** Respondent's argument on this issue applies to both of Petitioner's cases.

**4.** "After conviction, whether with or without jury, the court may suspend imposition of

This, according to Respondent, gives sentencing courts discretion, thereby making Virginia's life-without-parole penalty scheme discretionary, rather than mandatory. ECF No. 54 at 1 (2:13cv375).

The second part of Respondent's argument is that the rule announced in *Miller* only applies to mandatory penalty schemes. *Id.* Therefore, because Virginia's penalty scheme is discretionary, Respondent maintains that *Miller* does not apply to the sentences Petitioner received from Virginia courts. *Id.*

■ This Court need not determine whether Virginia's penalty scheme is mandatory or discretionary because this Court finds that the rule announced in *Miller* applies to all situations in which juveniles receive a life-without-parole sentence. A thorough review of *Miller* and *Montgomery* reveals that the Eighth Amendment right announced therein is not possessed solely by those juveniles who are fortunate enough to be sentenced in states with mandatory penalty schemes. Rather, the Supreme Court recognized that juveniles are constitutionally different from adults and that they are, therefore, entitled to certain considerations before being sentenced to die in prison.

In *Montgomery*, the Supreme Court clarified the scope of the rule in *Miller*, stating, "*Miller* determined that sentencing a child to life without parole is excessive for all but 'the rare juvenile offender whose crime reflects irreparable corruption,' ...." *Montgomery*, 136 S.Ct. at 734 (quoting *Miller*, 132 S.Ct. at 2469) (emphasis added). If only the "rare," irreparably corrupted juvenile deserves a life-without-parole sentence, as *Montgomery* states, then there must be a system in place to ensure that undeserving juveniles are not given an unconstitutionally "excessive"

sentence. This, then, is the purpose of the *Miller* rule: to evaluate all juveniles facing life imprisonment without parole and sort out which ones are irreparably corrupted and which are not.

In order to guarantee that only the few deserving juveniles receive a life-without-parole sentence, the *Miller* rule must be applicable to all states, not only the ones that employ a mandatory penalty scheme. For this Court to decide otherwise would mean that juveniles in states with discretionary penalty schemes would not be entitled to a hearing where the judge must determine whether they are irreparably corrupted. This would result in a system where juveniles who are not deserving of a life-without-parole sentence could nevertheless receive such a sentence because the circumstances of their crime are not being evaluated according to the *Miller* standard. Such a system does not comport with the *Miller* rule as it was explained in *Montgomery*.

The Supreme Court further stated, "[*Miller*] rendered life without parole an unconstitutional penalty for ... juvenile offenders whose crimes reflect the transient immaturity of youth." *Montgomery*, 136 S.Ct. at 734 (emphasis added). Indeed, "*Miller's* substantive holding [is] that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." *Id.* at 735 (emphasis added). "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Id.* at 734 (quoting *Miller*, 132 S.Ct. at 2469) (emphasis added).

The test required by the *Miller* rule is not a two-step inquiry that first asks what

sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the

court shall determine ...." Va. Code § 19.2–303.

type of penalty scheme was used and then only imposes *Miller*'s Eighth Amendment requirement if the scheme is mandatory. The true test announced in *Miller* and *Montgomery* is whether the sentencing judge actually weighed the evidence sufficiently to determine whether the circumstances surrounding the juvenile's actions reflect "irreparable corruption" on the one hand, or "the transient immaturity of youth" on the other.

This Court recognizes that the penalty schemes addressed in *Miller* and *Montgomery* were mandatory. However, this fact does not overpower the breadth and depth of the Supreme Court's detailed discussion about the Eighth Amendment right possessed by juveniles facing life imprisonment without parole. It seems clear that the Supreme Court discussed those mandatory penalty schemes to explain how they categorically denied to those juveniles an Eighth Amendment right that is possessed by all juveniles, regardless of where they are sentenced.

■ The Supreme Court's discussion shows that, while this Eighth Amendment right <u>can be</u> violated by any sentencing judge, it is <u>necessarily</u> violated by every sentencing judge operating under a mandatory penalty scheme because they are denied "the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 132 S.Ct. at 2475. In other words, mandatory penalty schemes create a *per se* violation of the Eighth Amendment right announced in *Miller* because they preclude the possibility of an "individualized sentencing," to which all juveniles are entitled before they receive "the law's most serious punishments." *Id.* at 2471. However, as explained above, this does not mean that mandatory penalty schemes are the only situations in which the Eighth Amendment right announced in *Miller* can be violated.

Justice Sotomayor reaffirmed this rule in *Tatum v. Arizona*, —— U.S. ——, 137 S.Ct. 11, 196 L.Ed.2d 284 (2016) (Sotomayor, J., concurring). In *Tatum*, trial courts in Arizona sentenced several juveniles to life imprisonment without parole. The Arizona Court of Appeals held that *Miller* did not apply to Arizona's life-without-parole penalty scheme because it was not a mandatory scheme. *State v. Tatum*, 2015 WL 728080, at *1 ¶5 (Ariz. Ct. App. Feb. 18, 2015), *review denied* (Jan. 5, 2016), *cert. granted*, and *judgment vacated*, —— U.S. ——, 137 S.Ct. 11, 196 L.Ed.2d 284 (2016). Without addressing whether Arizona's penalty scheme was mandatory or discretionary, the U.S. Supreme Court vacated the Arizona Court of Appeals' decision and remanded the case for further consideration in light of *Montgomery*. The majority opinion contained no analysis or explanation of its decision. However, Justice Sotomayor penned a substantive concurring opinion, which stated the following:

> On the record before us, none of the sentencing judges addressed the question *Miller* and *Montgomery* require a sentencer to ask: whether the petitioner was among the very "rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility."
>
> · · ·
>
> It is clear after *Montgomery* that the Eighth Amendment requires more than mere consideration of a juvenile offender's age before the imposition of a sentence of life without parole. It requires that a sentencer decide whether the juvenile offender before it is a child "whose crimes reflect transient immaturity" or is one of "those rare children whose crimes reflect irreparable corruption" for whom a life without parole sentence may be appropriate. There is thus a very meaningful task for the lower courts to carry out on remand.

*Tatum v. Arizona*, —— U.S. ——, 137 S.Ct. 11, 12–13, 196 L.Ed.2d 284 (2016) (citations omitted).

Notwithstanding the Arizona Court of Appeals' finding that its penalty scheme was not mandatory, the U.S. Supreme Court nevertheless ruled that Arizona must still comply with the requirements of *Miller* and *Montgomery*. It is apparent, therefore, that the rule announced in *Miller* and made retroactive in *Montgomery* requires sentencing judges to consider the factors articulated in those opinions <u>every time</u> a juvenile is sentenced to life imprisonment without parole. This, of course, includes Petitioner's sentences.

## C. Whether Petitioner's Crimes Warrant Life–Without–Parole Sentences

Respondent next argues that Petitioner's crimes are so heinous that the life-without-parole sentences he received are warranted.[5] ECF No. 44 at 4–9 (2:13cv375); ECF No. 38 at 6–10 (2:13cv376). Respondent states, "[P]etitioner's extended course of violent conduct militates against a finding that his 'life without parole' sentence violates *Miller* and *Montgomery*." ECF No. 44 at 4 (2:13cv375); ECF No. 38 at 6 (2:13cv376).

■ This Court cannot consider this argument from Respondent because this matter is not the appropriate forum for such an argument. In effect, Respondent is asking this Court to engage in the type of Eighth Amendment considerations that *Miller* and *Montgomery* require sentencing judges to undertake. This Court's task is to determine whether Petitioner is entitled to the relief he seeks under § 2254. Among Petitioner's pleas for relief is a request for a resentencing hearing conducted in accordance with the requirements of *Miller* and *Montgomery*. If this Court were to grant Petitioner's request, the resultant resentencing hearings would be the appropriate forums for Respondent to make arguments about the nature of Petitioner's crimes and how that "militates" for or against a certain sentence. Such an argument is outside the scope of this Court's current inquiry.

## D. Whether Petitioner's Sentencing Proceedings Comported with *Miller* and *Montgomery*

Respondent next argues that, even if *Miller* and *Montgomery* were to apply to Petitioner's sentences, Petitioner would not be entitled to the relief he seeks because the sentencing proceedings in Chesapeake satisfied the constitutional requirements announced in *Miller* and *Montgomery*.[6] ECF No. 44 at 4 (2:13cv375).

In the Chesapeake Circuit Court case, Petitioner had a bifurcated trial. The first trial was held to determine Petitioner's guilt for the charged crimes. This trial resulted in two capital murder convictions, in addition to a firearm conviction. Petitioner's capital murder offenses were classified as Class 1 felonies in Virginia. *See* Va. Code § 18.2–31 (2002). Therefore, at that time, these offenses were punishable by only two sentences: death or life imprisonment without parole. *See* Va. Code § 18.2–10(a) (2003) (amended 2006).[7]

---

5. This argument applies to both of Petitioner's cases.

6. This argument only applies to Petitioner's case in Chesapeake Circuit Court.

7. *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Supreme Court case that prohibited capital punishment for all juveniles, was decided in 2005. However, Petitioner was convicted and sentenced in 2003. Therefore, Petitioner was eligible for the death penalty at that time.

Virginia law in 2003 stated, "Upon a finding that the defendant is guilty of an offense which may be punishable by death, a proceeding shall be held which shall be limited to a determination as to whether the defendant shall be sentenced to death or life imprisonment.... In case of trial by jury, where a sentence of death is not recommended, the defendant shall be sentenced to imprisonment for life." Va. Code § 19.2–264.4 (2003). Pursuant to the statute, a second proceeding was held to allow the jury to hear evidence before making a recommendation to the sentencing judge regarding which of the two possible punishments was appropriate.

Respondent argues that the jury found that Petitioner constituted a "future danger" and that his crimes were "vile." ECF No. 44 at 4 (2:13cv375). According to Respondent, this shows that Petitioner is the "rare juvenile offender whose crime reflects irreparable corruption." *Id.* As support for this assertion, Respondent states, "Under Virginia law, the Commonwealth must prove one or both of these aggravating factors [ ('future danger' or 'vileness of crimes') ] beyond a reasonable doubt for the defendant to be eligible for the death penalty." ECF No. 44 at 4 n.6 (citing *Lawlor v. Commonwealth*, 285 Va. 187, 239, 738 S.E.2d 847 (2013) (2:13cv375).

■ However, a review of the *Lawlor* opinion reveals that the jury must unanimously find one or both of these aggravating factors beyond a reasonable doubt in order for the judge to <u>impose</u> the death penalty. *Lawlor v. Commonwealth*, 285 Va. 187, 237–39, 738 S.E.2d 847 (2013). The *Lawlor* opinion mentions nothing regarding these aggravating factors being prerequisites for <u>eligibility</u> for the death penalty. Furthermore, the definition of "capital murder," the crime for which Petitioner was eligible for the death penalty in Chesapeake, makes no mention of either of these factors. *See* Va. Code § 18.2–31

(2002). Therefore, the jury's decision to convict Petitioner for death-penalty-<u>eligible</u> offenses provides no evidence that the jury made any finding regarding "future danger" or "vileness."

Moreover, even if there were indicia that the jury had made a finding about either of these two aggravating factors, this Court is not convinced that such a finding would satisfy the requirements of *Miller* and *Montgomery.* Indeed, *Miller* and *Montgomery* require <u>the sentencing judge</u> to consider certain factors before sentencing a juvenile to life imprisonment without parole. Any findings made by the jury, notwithstanding their possible impact on the jury's penalty recommendation, cannot supplant the judge's duty to consider the factors expressed in *Miller* and *Montgomery.*

Turning to the judge's role in the Chesapeake sentencing, Petitioner argues that the sentencing judge did not consider the appropriate mitigating factors before imposing the life-without-parole sentences. ECF No. 41 at 7–8 (2:13cv375). Respondent argues that it was Petitioner's responsibility to ask the judge to consider mitigating factors and suspend his sentences. ECF No. 46 at 4–5 (2:13cv375). Respondent claims that, in the absence of such a request, the judge did not violate *Miller* and *Montgomery* by not considering mitigating factors. *Id.* This Court disagrees.

As explained above, a sentencing judge must consider the factors articulated in *Miller* and *Montgomery* every time a juvenile is sentenced to life imprisonment without parole. Here, there is no evidence to suggest that the sentencing judge considered "whether the juvenile offender before it [was] a child 'whose crimes reflect transient immaturity' or [was] one of 'those rare children whose crimes reflect irreparable corruption' for whom a life without

parole sentence may be appropriate." *Ta-tum*, 137 S.Ct. at 13. This is a violation of the Eighth Amendment, as announced in *Miller* and *Montgomery*.

## E. Whether Petitioner Waived his Right to Challenge His Sentences

Finally, Respondent argues that Petitioner waived his right to appeal his sentences in the Spotsylvania County Circuit Court case when he signed the "*Alford* plea" agreement.[8] ECF No. 38 at 4–5 (2:13cv376). Petitioner's plea agreement states, "I understand that by entering an 'Alford plea', ... I waive my right to an appeal ...." ECF No. 38, Ex. 1 at 6 (2:13cv376). The plea agreement also states, "It is further understood and agreed that the defendant will be sentenced to life in prison without parole ...." *Id.* Respondent argues that these two statements constitute a waiver of Petitioner's right to appeal his sentence and preclude the relief he seeks. ECF No. 38 at 1, 4–5 (2:13cv376).

### 1. Appeal Waiver

█ First, Respondent argues that Petitioner cannot achieve review of his sentences because he has waived his appeal right. Respondent appears to assert that Petitioner's § 2254 motion is included in the appeal right that Petitioner waived in his guilty plea. This assertion is incorrect.

An application for a writ of habeas corpus pursuant to § 2254 is a method of collaterally attacking a sentence. The Fourth Circuit has made it clear that an appeal is distinct from a collateral attack. In *United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005), the defendant's plea agreement read as follows:

WAIVER OF RIGHT TO APPEAL AND WAIVER OF RIGHT TO COLLATERALLY ATTACK

I hereby waive my right of appeal as to any and all issues in this case, and consent to the final disposition of this matter by the United States District Court. In addition, I waive any right I may have to collaterally attack, in any future proceeding, my conviction and/or sentence imposed in this case.

*Lemaster*, 403 F.3d at 218 (emphasis added).

At the Federal Rule of Criminal Procedure 11 proceedings in *Lemaster*, the prosecutor asked the defendant if he understood that he was waiving his right to an appeal. *Id.* After receiving an affirmative response, the prosecutor then asked the defendant if he understood that he was also waiving his right to file a collateral attack. *Id.* The district judge at those proceedings likewise discussed this section of the guilty plea as involving two separate rights that require two separate waivers. *Id.* In *Lemaster*, the Fourth Circuit stated, "Although it is well settled that a defendant may waive his right to appeal directly from his conviction and sentence, we have never considered whether a defendant may also waive his right to attack his conviction and sentence collaterally.... [W]e hold that a criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *Id.* at 220 (emphasis added).

Petitioner's waiver of his right to an appeal does not also operate as a waiver of his right to collaterally attack his sentence through a § 2254 motion. While it is possible for a defendant to waive his right to collaterally attack his sentence, Petitioner's plea agreement does not include such a waiver. *See* ECF No. 38, Ex. 1 at 1–9 (2:13cv376). The transcript of Petitioner's sentencing hearing reveals that his colloquy with the sentencing judge was likewise

---

**8.** This argument only applies to Petitioner's case in Spotsylvania County Circuit Court.

devoid of such a waiver. *See* ECF No. 38, Ex. 1 at 27–42 (2:13cv376). Therefore, Petitioner did not waive his right to collaterally attack his sentence through a § 2254 motion.

### 2. Agreement on Sentence

Respondent's second argument highlights the section of Petitioner's plea agreement wherein he agrees to be sentenced to life in prison without parole for both the capital murder offense and the attempted capital murder offense. Respondent argues that Petitioner cannot challenge these two sentences because he explicitly agreed to them in the plea agreement. ECF No. 38 at 1, 4–5 (2:13cv376). Because juveniles facing life-without-parole sentences are entitled to the Eighth Amendment protections discussed in *Miller* and *Montgomery*, any agreement regarding sentencing necessarily implicates and involves that Eighth Amendment right. Therefore, in order for that provision of the plea agreement to be enforceable, Petitioner must have waived the right announced in *Miller*.

▮ Juveniles facing life imprisonment without parole have an Eighth Amendment right to a sentencing hearing where the judge must determine "whether the juvenile offender before it is a child 'whose crimes reflect transient immaturity' or is one of 'those rare children whose crimes reflect irreparable corruption' . . . ." *See Tatum*, 137 S.Ct. at 12; *Montgomery*, 136 S.Ct. at 735. In *Montgomery*, the Supreme Court held that this right was a substantive rule of constitutional law. *Montgomery*, 136 S.Ct. at 734. "Like other substantive rules, *Miller* is retroactive because it 'necessarily carr[ies] a significant risk that a defendant'—here, the vast majority of juvenile offenders—'faces a punishment that the law cannot impose upon him.' " *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S.Ct. 2519, 159 L.Ed.2d 442

(2004)). Therefore, this Court must analyze the sentencing process in the Spotsylvania County Circuit Court case within the context of the Eighth Amendment right announced in *Miller*.

Inherent in Respondent's argument is the underlying assertion that Petitioner effectively waived the Eighth Amendment right announced in *Miller* when he agreed to be sentenced to life imprisonment without parole. The law is well-settled that a criminal defendant can waive many substantive constitutional rights that would inure to him during all phases of a criminal prosecution, including at the sentencing phase. This Court is unaware of any reason that the Eighth Amendment right announced in *Miller* cannot be waived in like manner. The question for this Court is whether such a waiver took place in Petitioner's Spotsylvania case.

▮ "A plea agreement is 'essentially a contract between an accused and the government' and is therefore subject to interpretation under the principles of contract law." *United States v. Davis*, 689 F.3d 349, 353 (4th Cir. 2012) (quoting *United States v. Lewis*, 633 F.3d 262, 269 (4th Cir. 2011)). "Because a defendant's fundamental and constitutional rights are implicated when he is induced to plead guilty by reason of a plea agreement, our analysis of the plea agreement or breach thereof is conducted with greater scrutiny than in a commercial contract." *United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997).

▮ The Supreme Court has adopted a " 'high standar[d] of proof for the waiver of constitutional rights.' "*Minnick v. Mississippi*, 498 U.S. 146, 159, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (quoting *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). "Waiver . . . of constitutional rights in the criminal process generally, must be a 'knowing, intelligent ac[t] done with sufficient aware-

ness of the relevant circumstances.' " *Iowa v. Tovar*, 541 U.S. 77, 81, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970)). "Waiver is 'an intentional relinquishment or abandonment of a known right or privilege,' and whether such a relinquishment or abandonment has occurred depends 'in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Minnick*, 498 U.S. at 159, 111 S.Ct. 486 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).

■ The Fourth Circuit has also imposed this heightened review standard on contracts that purport to include a waiver of constitutional rights. "[S]imply because a contract includes the waiver of a constitutional right does not render the contract *per se* unenforceable. But a waiver of constitutional rights in a contract might well heighten the scrutiny of its enforceability because the law does not presume the waiver of constitutional rights. The contractual waiver of a constitutional right must be a knowing waiver, must be voluntarily given, and must not undermine the relevant public interest in order to be enforceable." *Lake James Cmty. Volunteer Fire Dep't, Inc. v. Burke Cty., N.C.*, 149 F.3d 277, 280 (4th Cir. 1998) (citations omitted) (emphasis in original).

As the Supreme Court has stated, a waiver of constitutional rights must be knowing, meaning that it must be an intentional relinquishment of a known right that is done with a sufficient awareness of the relevant circumstances. *See Iowa*, 541 U.S. at 81, 124 S.Ct. 1379; *Minnick*, 498 U.S. at 159, 111 S.Ct. 486. Upon review of the facts and circumstances surrounding Petitioner's case, it is clear that Petitioner did not waive the Eighth Amendment right announced in *Miller*.

■ There is no evidence in the record to suggest that Petitioner was aware of the existence of this right, much less that he intended to relinquish or abandon it. The plea agreement notifies Petitioner that, by signing the agreement, he is waiving constitutionally-guaranteed rights. *See* ECF No. 38, Ex. 1 at 6–7 (2:13cv376). The specific rights that he is waiving are explicitly listed in the plea agreement. *See* ECF No. 38, Ex. 1 at 6–7 (2:13cv376). During Petitioner's sentencing hearing, the judge verbally confirmed with Petitioner that he understood the constitutional rights he was waiving by signing the plea agreement. *See* ECF No. 38, Ex. 1 at 28–41 (2:13cv376). Courts have routinely upheld such circumstances and procedures as sufficient to establish that a knowing, intelligent waiver of rights has occurred. *See, e.g., Libretti v. United States*, 516 U.S. 29, 50, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995); *United States v. Johnson*, 410 F.3d 137, 151 (4th Cir. 2005); *Lemaster*, 403 F.3d at 222–23.

Crucially, neither the plea agreement nor the sentencing judge provided any notification to Petitioner that, by signing the plea agreement, he was waiving his Eighth Amendment right to a sentencing hearing in which the judge must determine "whether the juvenile offender before it is a child 'whose crimes reflect transient immaturity' or is one of 'those rare children whose crimes reflect irreparable corruption' . . . ." *See Tatum*, 137 S.Ct. at 12; *Montgomery*, 136 S.Ct. at 735.

This Court recognizes, given the fact that Petitioner was sentenced more than eight years before *Miller* was decided, that it is not likely that any such notification would have been included among the plea agreement's provisions or the judge's verbal admonitions. Nevertheless, the very nature of the *Miller* rule's retroactive applicability compels this court to apply that

rule to situations and circumstances that predate the rule. Such is the case here.

In order to adopt Respondent's view on this issue, this Court would have to find that Petitioner implicitly or indirectly waived the Eighth Amendment right announced in *Miller* when he agreed to be sentenced to life imprisonment without parole. This Court cannot adopt such a view. As the Supreme Court has stated, there is a high standard for the waiver of constitutional rights. *See Minnick*, 498 U.S. at 159, 111 S.Ct. 486. In addition to being voluntary, a valid waiver must also be knowing, intelligent, and intentional. *See Iowa*, 541 U.S. at 81, 124 S.Ct. 1379; *Minnick*, 498 U.S. at 159, 111 S.Ct. 486. Constitutional rights cannot be waived implicitly, indirectly, and without notice.

### 3. Paragraph 8(B) of the Plea Agreement

Having found that Petitioner did not waive the Eighth Amendment right announced in *Miller*, this Court must now determine the proper application of that finding to the Spotsylvania plea agreement.

Petitioner's agreement to be sentenced to life imprisonment without parole is recorded in Paragraph 8(B) ("¶ 8(B)") of the plea agreement. *See* ECF No. 38, Ex. 1 at 6 (2:13cv376). The pertinent provisions read, "It is further understood and agreed that the defendant will be sentenced to life in prison without parole for the Capital Murder of Kenneth Bridges; to life in prison without parole for the Attempted Capital Murder of Caroline Seawell; ...." ECF No. 38, Ex. 1 at 6 (2:13cv376).

As stated above, a plea agreement is "subject to interpretation under the principles of contract law." *Davis*, 689 F.3d at 353. "[A] contract will be enforced unless the interest promoted by its enforcement is outweighed by the public policy harms resulting from enforcement." *Burke*

*Cty., N.C.*, 149 F.3d at 280 (citing RESTATEMENT (SECOND) OF CONTRACTS § 178 (AM. LAW INST. 1981)). Within the context of contractual principles, this case clearly represents a situation in which certain terms of the agreement (i.e., the life-without-parole provisions of ¶ 8(B)) are unenforceable on grounds of public policy.

The Restatement (Second) of Contracts states, "A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its enforcement is clearly outweighed in the circumstances by a public policy against the enforcement of such terms." RESTATEMENT (SECOND) OF CONTRACTS § 178 (AM. LAW INST. 1981) (emphasis added).

In considering the weight of the interest in enforcing a term of the agreement, courts should take into account (1) the parties' justified expectations, (2) any forfeiture that would result if enforcement were denied, and (3) any special public interest in the enforcement of the particular term. *Id.*

The agreement terms at issue here are the two life-without-parole provisions of ¶ 8(B). Based on these terms, the parties' expectations were that Petitioner would receive two life-without-parole sentences in Spotsylvania. It is important to note that, if the life-without-parole provisions of ¶ 8(B) were not enforced, the parties' expectations would not necessarily be thwarted. While non-enforcement of these provisions would eliminate the certainty that Petitioner will receive two life-without-parole sentences, it is completely possible that any resentencing conducted in accordance with *Miller* and *Montgomery* results in the same sentences.

Next, no forfeiture would result if enforcement were denied. Lastly, this Court finds that there exists a special public interest in the enforcement of plea

agreement provisions because they provide advantages for both defendants and prosecutors in the form of certainty, efficiency, and economy. *See Brady*, 397 U.S. at 752, 90 S.Ct. 1463. For these reasons, and in consideration of the ubiquity of plea agreements in our criminal justice system, the special public interest in enforcing these plea agreement provisions is quite large.

In considering the weight of a public policy against the enforcement of a contract term, courts should take into account (1) the strength of that policy as manifested by legislation or judicial decisions, (2) the likelihood that a refusal to enforce the term will further that policy, (3) the seriousness of any misconduct involved and the extent to which it was deliberate, and (4) the directness of the connection between that misconduct and the term. RESTATEMENT (SECOND) OF CONTRACTS § 178 (AM. LAW INST. 1981) (emphasis added).

The public policy at issue here is the Eighth Amendment right and the corresponding rule announced in *Miller*. The Supreme Court has decided that the *Miller* rule is a substantive rule of constitutional law that is so fundamental that it requires retroactive application. *See Montgomery*, 136 S.Ct. at 734. That this public policy is a constitutionally-protected right derived from the Eighth Amendment weighs quite heavily. In other words, the strength of this public policy is exceedingly large, given that it implicates our most foundational rights as citizens. Indeed, it is doubtful that there exists a public policy more foundational than those safeguarding the constitutional due process by which the state deprives citizens of their life and liberty.

Next, it is clear that a refusal to enforce the two life-without-parole provisions of ¶ 8(B) will further the public policy discussed in *Miller* and *Montgomery*. Lastly, there is no evidence in the record to suggest that any misconduct occurred here.

After weighing the Restatement factors, this Court finds that the public policy involved here outweighs the interest in enforcing the two life-without-parole provisions of ¶ 8(B). Therefore, the two provisions of ¶ 8(B) that dictate sentences of "life in prison without parole" are unenforceable on the grounds of public policy.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that Petitioner is entitled to relief. Accordingly, Respondent's motion to dismiss is **DENIED** and Petitioner's § 2254 motions are both **GRANTED**.

The sentences Petitioner received in Chesapeake Circuit Court for the two capital murder convictions are hereby **VACATED** and his case (2:13cv375) is **REMANDED** to Chesapeake Circuit Court for disposition on those two convictions in accordance with *Miller* and *Montgomery*.

The sentences Petitioner received in Spotsylvania County Circuit Court for the capital murder conviction and the attempted capital murder conviction are hereby **VACATED** and his case (2:13cv376) is **REMANDED** to Spotsylvania County Circuit Court for disposition on those two convictions in accordance with *Miller* and *Montgomery*.

The Court **DIRECTS** the Clerk to send a copy of this Order to the parties.

**IT IS SO ORDERED.**